[Filed November 28, 1887.]

## JAMES HAMLIN, Appellant, v. FRANK KASSAFER et al., Respondents.

OFFICER DE FACTO — ACTS OF. — An office is the right to exercise a public function or employment, and to take the fees and emoluments belonging to it. From its inherent nature, no less than from reasons of public policy, there cannot be two persons in the possession of an office at the same time.

POSSESSION OF OFFICE — WHAT CONSTITUTES. — To constitute a person an officer de facto he must be in the actual possession of the office, and in the exercise of its functions, and in the discharge of its duties, and when this is the fact, necessarily, there can be no other incumbent of the office. An officer de facto is one who has the lawful right to the office, but who has either been ousted from or never actually taken possession of the office.

CLAIM OF RIGHT — COLOR OF. — The mere claim to be a public officer is not enough to constitute one an officer de facto. There must be some color to the claim of right to the office, or without such color a performance of official duties, with the acquiescence of the public for such a length of time as to raise a presumption of colorable right.

THE PUBLIC INTEREST. — The interest of all persons having business with the office in controversy, imperatively demand that until the question of title can be decided, there should be some person recognized as in peaceable possession de facto of the office, and of the muniments necessary to discharge its duties.

TERM OF OFFICER — EXPIRATION OF — ACTS OF. — Where one is holding over after the expiration of his term under claim or color of right, his official acts are those of a de facto officer, and are valid as to the public and third persons, and cannot be collaterally assailed.

JUDGMENT OF DE FACTO JUDICIAL OFFICER — COLLATERAL ATTACK UPON. — When F. was holding the office of justice of the peace, and in a subsequent election was defeated by H., who received the certificate of election, duly qualified, and demanded possession of the office, which F. refused to surrender, held, that F. was a de facto officer, and that a judgment obtained before him could not be collaterally assailed.

APPEAL from Jackson County. Affirmed.

*W. R. Andrews*, for Appellant.

*H. K. Hanna*, for Respondents.

LORD, C. J. — This action was brought by the plaintiff against the defendants to recover certain personal property alleged to have been wrongfully taken. The defendants admitted the taking, but justified in substance to this effect: That on the 28th day of September, 1887, the defendant Carlton recovered a judgment in a Justice's Court before one E. D. Foudroy, against the plaintiff Hamlin, for the sum of eighty dollars and costs; that execution was issued thereon, and placed in the hands of the defendant Kassafer as constable, and that the property aforesaid was seized and taken into custody under the same, etc. The plaintiff denied the recovery of the judgment in the said Justice's Court, or in any court, etc. Upon issue being thus joined, the issue raised was as to the validity of said judgment.

The evidence as disclosed by the bill of exceptions is, in substance, that one E. D. Foudroy had been elected justice of the peace for the precinct of Jacksonville, at the general election in 1884, and had entered upon the discharge of the duties of his office; that at the general election in 1886, Foudroy was again a candidate for that office, but was defeated by one G. A. Hubbel, who received the certificate of election and duly qualified, and that he demanded of the said Foudroy the possession of said office, its docket, and books thereunto belonging, but that Foudroy refused to surrender the same, and continued to exercise and perform the functions of the said office; that thereafter, and at the time of the rendition of the said judgment by the said Foudroy, he was in possession of said office in which he had held court as a justice of the peace, and of the docket and books, and also a sign at the door notifying the public he was such officer; that the defendant Hubbel, when said judgment was rendered, was in possession of the town hall, and had acted as, and performed the duties and functions of a justice of the peace, and that these matters were open and notorious; but the evidence indicates that these acts were performed in · his official character as a city recorder, by virtue of which he was *ex officio* justice of the peace; that the defendant Carlton at the time of

the-recovery of said judgment was a resident of Medford, and had no knowledge of any dispute as to who was justice of the peace. Upon this state of facts the court gave several instructions which were excepted to, and refused to give another, which constitutes the main source of grievance, and from which it is evident that the plaintiff sought to have the court instruct the jury that the defendant Foudroy was a mere usurper when the judgment was rendered by him.

It is admitted, therefore, that this record presents only one question, was Foudroy a *de facto* officer? Upon this point there would seem to be little room for controversy, for conceding, as was argued, that Hubbel, by reason of official duties performed at the town hall, was reputed to be a justice of the peace, it by no means follows that these facts operated to displace Foudroy, and induct *him* into the possession of the disputed office. To render the judgment void, Foudroy must have presumed to act without any just pretense or color of title. As this is the contention of counsel for the plaintiff, it may not be amiss to note, preliminarily, some distinctions as to officers, which will render the law applicable to the facts in hand more evident.

An office has been defined to be a right to exercise a public function or employment, and to take the fees and emoluments belonging to it, and Chief Justice Marshall says: " He who performs the duties of that office is an officer." From the inherent nature of an office, no less than from reasons of public policy, there cannot be two persons in the possession of an office at the same time. It becomes important, then, to observe the distinction between an officer *de jure* and an officer *de facto*. Lord Ellensborough said: " One who has the reputation of being the officer he assumed to be, and yet is not a good officer in point of law, is an officer *de facto*." (*King* v. *Bedford Level*, 6 East, 356.) To constitute a person an officer *de facto*, he must be in the actual possession of the office, and in the exercise of its functions and in the discharge of its duties. When this is the fact necessarily, there can be no other incumbent of the office. An officer *de jure* is one who has the lawful right to the office, but who has either been ousted from, or never actually taken posses-

sion c the office. When the officer *de jure* is also the officer *de fa* ), the lawful title and possession is united; then no other person can be an officer *de facto* for that office. " Two persons cannot be officers *de facto* for the same office at the same time." (*McCahon* v. *Commrs.* 3 Kan. 442; *Boardman* v. *Halliday,* 10 Paige, 232; *Morgan* v. *Quackenbush,* 22 Barb. 80.)  " An officer *de facto,*" said Storrs, J., "is one who exercises the duties of an office, under color of an appointment or election to that office. He differs, on the one hand, from a mere usurper of an office, who undertakes to act as an officer without any color of right; and on the other hand, from an officer *de jure,* who is, in all respects, legally appointed and qualified to exercise the office. It is not in all cases easy to determine what ought to be considered as constituting a colorable right to an office, so as to determine whether one is a mere usurper." (*Plymouth* v. *Painter,* 17 Conn. 588.) The distinction, then, which the law recognizes, is that an officer *de jure* is one who has the lawful right or title, without the possession of the office, while an officer *de facto* has the possession and performs the duties under the color of right, without being actually qualified in law so to act, both being distinguished from the mere usurper, who has neither lawful title nor color of right. The mere claim to be a public officer is not enough to constitute one an officer *de facto.* There must be some c 'or to the claim of right to the office, or without such color, a performance of official duties, with the acquiescence of the public, for such a length of time as to raise a presumption of colorable right. (*Brown* v. *Lunt,* 37 Me. 428; *Burk* v. *Elliott,* 4 Ired. 355; *Conover* v. *Devlin,* 15 How. Pr. 477; *Ex parte Strang,* 21 Ohio St. 610.) Said Sutherland, J.: "There must be some color of election or appointment, or an exercise of the office, and an acquiescence for a length of time, which would afford a strong presumption of, at least, a colorable election or appointment." (*Wilcox* v. *Smith,* 5 Wend. 233. See, also, *State* v. *Carroll,* 38 Conn. 449.) It may be said, then, that the color of right which constitutes one an officer *de facto,* may consist in an election or appointment, or in holding over after the expiration of one's term, or acquiescence by the public in the acts of such officer for

such a length of time as to raise the presumption of colorable right by election or appointment.

From considerations of public policy, the law recognizes the official acts of such officers as lawful to a certain extent. It will not allow them to be questioned collaterally, and they are valid as to the public, and as to third persons who have an interest in the thing done. (*People* v. *Stevens*, 5 Hill, 630; *Burton* v. *Patten*, 2 Jones [N. C.] 124; *People* v. *Sassovich*, 29 Cal. 480.) Within the scope of his authority, the acts of an officer *de jure* are valid for all purposes. Not so with an officer *de facto;* his acts are only recognized in the law to be valid and effectual so far as they affect the public and third persons. As to these, his acts are as valid as if he were an officer *de jure.* The reason of the rule is apparent. It would be as unjust as unreasonable to require every individual doing business with such officer to investigate and determine at his peril the title of such officer. "Third persons, from the nature of the case, cannot always investigate the right of one assuming to hold an important office, even so far as to say that he has color of title to it by virtue of some appointment or election. If they see him publicly exercising its authority, if they ascertain that this is generally acquiesced in, they are entitled to treat him as such officer, and if they employ him as such, should not be subjected to the danger of having his acts collaterally called into question." (Devens, J., in *Petersilea* v. *Stone*, 119 Mass. 467.) Besides, it is against the policy of the law to allow a suit between private individuals to determine the title to an office. Such judgment could only bind the parties, and would be of no effect as against the public.

Upon the facts of the case in hand, Foudroy was not an intruder, and did not usurp the office. He may have been holding over without legal authority. His term had expired, but he had not been ousted, but remained in the possession of the office, and continued to exercise the functions and discharge its duties. A mere usurper is one who acts without color of title, and whose acts are utterly void. (*Hooper* v. *Goodwin*, 48 Me. 80; *Tucker* v. *Aiken*, 7 N. H. 113.) Said Christian, J.: "A mere usurper is one who intrudes himself into an office which is vacant, and ousts

the incumbent without any color of title whatever; and his acts are void in every respect." (*McCrow* v. *Williams,* 33 Gratt. 513.) Certainly, upon no view of the facts can Foudroy be regarded as an intruder or usurper within the purview of the law. From the fact that there was evidence tending to show that at the town hall Hubbel had discharged duties belonging to the office of a justice of the peace, and was reputed by some persons to be such officer, the counsel for the plaintiff assumes as a consequence that Foudroy had been dislodged or ousted, and that these facts, without, in fact, being in possession of the office, its books, or docket, operated in some way, I suppose, to give him constructive possession, and to constitute him an officer, not only *de jure* but *de facto,* and to make the acts of Foudroy those of an intruder or usurper.

Laying aside the fact that the witness who testified as to such acts of Hubbel in the town hall, also stated on cross-examination that Hubbel was at the time city recorder, by virtue of which he was *ex officio* justice of the peace, and that he did not know whether such acts were performed as an *ex officio* justice of the peace or not, it is plain law that no such consequences resulted. Foudroy being in possession of the office with the legal *indicia* of title, he was a *de facto* officer, and until the question of title was settled by a proper proceeding, he may discharge the duties of the office. "Until then," that is, ousted by *quo warranto,* says Mr. Blackwell, "he holds the office by the sufferance of the State, and the silence of the government is construed by the courts as a ratification of his acts, which is equivalent to a precedent authority. When the government acquiesces in the acts of such an officer, third persons ought not to be permitted to question them." (Blackwell on Tax Titles, 117.)

In *Leach* v. *Cassidy,* 23 Ind. 449, the court say: "The law has provided abundant means by which an officer *de jure* may become such *de facto* against another who wrongfully holds possession; but the public are interested; while such litigation is pending to settle the right, the function of the office shall continue to be exercised, in order that public business may be done. To this end, it is a rule of plain common sense, as well as law,

that an officer *de facto* shall act until he be ousted." Again, in the same court, in *State* v. *Jones,* 19 Ind. 358, Perkins, J., said: "But if when such person attempts to take possession of the office he is resisted by the previous incumbent, he will be compelled to try the right in some mode prescribed by law. If such elected or appointed person finds the office in fact vacant, and can take possession uncontested by the former incumbent, he may do so," etc. To the same effect in *Conover* v. *Devlin,* 5 Abb. Pr. 176, it is said: "The public interest—the interest of all persons having business with the office in controversy—imperatively requires that, until the question of title can be decided, there should be some one person recognized as in peaceable possession *de facto* of the office, and of course of the muniments necessary to discharge its duties.

In *State* v. *Durkee,* 12 Kan. 314, the court say: "The interest of the public requires that somebody should exercise the duties and functions of the various offices pending a litigation concerning them, and no one has a better right to do so than the various officers *de facto* who claimed to be officers *de jure.*" "It would be strange doctrine," said Valentine, J., "to announce that whenever an officer steps out of the place where he usually does his business that any person who chooses to claim the office may at once step in, and become immediately an officer *de facto.* Such a short road to obtain a contested office has never yet been opened. This is not the legal way to obtain the possession of a disputed office. The only legal remedy in such case for the party out of the office to obtain the possession of the same is by a civil action in the nature of a *quo warranto.*" (*Brady* v. *Theritt,* 17 Kan. 471.) The evidence is that Hubbel, who was elected and qualified, demanded the office, but that Foudroy, who was in possession, refused to deliver it up, or the books, papers, and docket, but remained in the possession of the same, exercising its functions and discharging its duties, when the judgment claimed to be void was rendered.

How, then, could Hubbel be in possession of such office? If he could not acquire possession and make himself an officer *de facto* by slipping in when Foudroy was out of the place where

he kept his office, according to the authority last cited, how could the acts supposed to have been performed as a justice of the peace in the town hall operate to give such possession, or constitute him an officer *de facto?* However much he may have been entitled to obtain the office, nothing but actual incumbency could make him the justice of the peace of the precinct to which he was elected. Note the analogy of the facts in *Morton* v. *Lee,* 26 Kan. 287, to the case in hand. For brevity they are taken from the syllabus: "Where a person is duly appointed by the governor of the State as a justice of the peace, and thereafter qualifies and enters upon the discharge of the duties of the office, and is placed in full possession of the books, papers, and docket pertaining to the office, and after the expiration of his term under his appointment continues to hold over, and refuses upon demand of his successor in office to deliver up the books, papers, and docket of the office, and has full charge and control of the same, and continues to discharge the duties of the office, and is generally recognized by a large portion of the people where he holds his office as such officer, *held,* that he is a justice of the peace *de facto,* and his acts as justice of the peace, though not those of a lawful officer, are valid so far as they involve the interest of the public and third persons."

In *Carli* v. *Rhener,* 27 Minn. 293, Smith, who had been elected judge, qualified, and thus under a statute became *de jure* a judge in the place of his predecessor N., whose term then expired. Thereafter upon the same day, before S. began to perform the duties of the office, N. directed judgment in an action he had tried; *held,* that his acts in doing so were those of an officer *de facto* and were valid.

From these citations it must be manifest that where one is holding over after the expiration of his term under claim or color of right, that his official acts are those of a *de facto* officer, and are valid as to the public and third persons, and cannot be collaterally assailed. And it must be considered as equally well settled that while he is in possession of such office, when an adverse claim is made, he may continue to exercise the office until the question is settled. As Foudroy was never ousted, or

in any manner abandoned the office, but continued in possession thereof, with all its legal *indicia*, exercising its functions and discharging its duties, he was a *de facto* officer, and as such when the judgment was rendered, it cannot be collaterally assailed.

The judgment of the court below must therefore be affirmed.