## UNITED STATES v. ALEXANDER et al.

*(District Court, D. Idaho. June 1, 1891.)*

1. JUDGE DE FACTO—TITLE TO OFFICE.
    Title to an office cannot be determined in a collateral proceeding, but sufficient inquiry may be made to determine whether a claimant is a mere intruder or not.
2. SAME.
    *De facto* officers are those who act under some color of right to the office, who perform its duties, who are generally recognized as the officers, whose acts as such are acquiesced in, and their acts are valid.

*(Syllabus by the Court.)*

At Law. Motion to set aside an order overruling a motion for new trial.

*Fremont Wood,* U. S. Atty.
*James W. Reid,* for defendants.

BEATTY, J. Trial of this cause having been had and judgment rendered in the first district court of Idaho territory, and a statement upon motion for a new trial having been settled, such motion was, on April 15, 1889, taken under advisement by the judge of said territorial court. On November 19, 1889, another judge was appointed, who on November 25, 1889, at Boise City, Idaho, duly qualified. On November 27, 1889, the former judge signed an order overruling the motion for a new trial, which was, on December 6, 1889, filed by the clerk of the court.

The defendants claim such order was made without authority, and ask its annulment. It is not, and cannot be, disputed that on the day this order was signed the new appointee was the duly appointed and qualified judge of said territorial court, and was then fully authorized to assume the duties thereof. Neither will it be doubted that if he had in fact then taken possession of such office, was then in the discharge of its duties, and was then generally known and recognized as such officer, no other person could at the same time exercise any authority as judge of that court. It must also be admitted he was the *de jure* judge, but it remains for determination whether his predecessor was a then *de facto* judge, and upon this question rests that of the validity of the order. At the threshold of the argument is raised the proposition of the right, in a collateral proceeding, to determine who was the legal officer. It is claimed that in this action we cannot look beyond the act of the officer, and investigate his title to the office, but that the order must be accepted as one made by a *de facto* officer, and as valid. This proposition, unconditionally accepted, would make valid the unauthorized proceedings of a mere intruder into an office; of any one who might assume, without the semblance of authority, to act, and thus leave us remediless against usurpation and the grossest injustice. While the question of strict title to an office can be inquired into and determined only by direct proceeding, and while courts will not, in a collateral proceeding, make such investigation, they may and will make such inquiry as will establish the line between the mere intruder into an office and one holding it under some color of title, some semblance of right,—between him without any authority whatever and the *de facto* officer.

It has long been established that as to the public and third persons the acts of a *de facto* officer are valid, and their virtue cannot be impeached by any inquiry, in a collateral way, into the strict title to the office. This rule is established as a matter of public policy and necessity, for the protection of the public who have dealings with officials. It would be a disastrously inconvenient requirement that all who have business with an official person must, before it can be transacted, inquire into the validity of the officer's claim to the office, and that the acts of those who have not legal right, although the semblance thereof, must in all cases be held void. We think the rule is that inquiry into the title to the office of a party acting therein may be pursued far enough, in any case, to show whether or not he is a *de facto* officer, but further than this the investigation will not go in a collateral proceeding. The question here arises, what is a *de facto* officer? Generally there must be found some color of title, some semblance of right, to the office, either by some election or appointment, though invalid, upon which the claim rests. The possession by the claimant of the office and the *indicia* thereof, the performance by him of the duties, in such an open and public manner as will justify the public generally in the belief that he is the officer, and especially the recognition by the people of and their acquiescence in his acts as such officer, are all elements which go to establish the character of a *de facto* officer. When one has been elected or appointed to an of-

fice, which he continues to hold, and of which he continues to perform the duties, even after the expiration of his term, but under some contest or claim of title, and he not only performs the duties, but is generally recognized by the public as the officer, and his acts are acquiesced in, he is a *de facto* officer. Or, even if there were no contest, and the old officer continues to be regarded as the officer, and to act as such, even after his successor is elected or appointed, and, without his knowledge, qualifies, his acts, so performed in good faith, may still be held valid; but if the new officer has qualified and assumed the duties of his office, and is generally known and recognized as the officer, the acts thereafter of the old officer, even if performed in good faith, cannot be held as official or legal, for the reason that such facts make the new officer not only a *de jure*, but also a *de facto*, officer, and there cannot be two *de facto* officers at the same time. When, therefore, the acts of the retiring officer will be sustained as those of the *de facto* officer, must depend much upon the facts and circumstances of each case. What are the controlling facts in this case? In addition to those already stated, it appears from the defendants' affidavits that the new judge qualified and assumed the duties of the office on November 25th, which he thence continued to perform; that he was from that date generally recognized by the people and bar as the judge; that on November 27th the clerk of the court received at Lewiston, Idaho, information that such judge was then in the district, and had qualified, which information he at once communicated to the retiring judge, and then left; that upon his return to Lewiston, on December 6th, the judge gave him said order to be filed, and it appears that on November 19th he had tendered his resignation, and on the next day saw the notice of his successor's appointment. The United States attorney says in his affidavit, upon his information, that the new judge did not assume his duties until after said order was signed, on November 27th; that said clerk informed him that the judge signed said order on said day before he was informed his successor had assumed such duties; and that after receiving such information he performed no other official acts. If this order is of force only from the date it was filed, no doubt can be entertained of its invalidity, for it is clear that prior to that time the new judge had both qualified and assumed his duties, and his authority to do so was not disputed, but was fully recognized by his predecessor, who had ceased to act. If the order was signed on the 27th day of November, after the judge was informed his successor had assumed his duties, it would be void. If it had already been signed when the clerk on said day communicated the information referred to, it is strange it was not delivered to the clerk to be filed. That it was not, is strongly suggestive either that it had not been signed, or, if signed, that the judge doubted its validity, and held it for further consideration. If so held, then it was not an order, even though signed, and no subsequent conclusion or determination concerning it can give it vitality, under the facts as they appear in the record. After a full examination of all the facts, it is concluded the order was erroneously made, and was not justified under the circumstances.

There is also another reason why this order should not be sustained. It was made when it was well known by all, including the judge who made it, that another judge had been appointed, whose qualification and assumption of the duties of the office it was reasonable to anticipate might occur any day. By a little care and inquiry it could easily have been learned just when this would happen, and thus avoid unnecessary conflict, and especially might this have been done, as there was no such emergency as demanded hasty action. Judicial officers, of all others, should observe the greatest care in the exercise of the important power delegated to them. In view of all the circumstances, I think the order was improvidently made. To hold it valid would be a precedent justifying a practice which courts should discourage rather than sustain. Courts have sustained the acts of *de facto* officers only as a matter of necessity, to avoid serious damage to those not at fault; but the encouragement of a careless practice on this subject would result in far greater injury than benefit. Rather is it better that it be understood that the acts and orders of those without the legal right to exercise official trust must pass the ordeal of the closest scrutiny, and be ratified only so far as justified by public policy and necessity.

The defendants' motion to set aside the order complained of is granted.