JOHNSON v. MANHATTAN RY. CO. et al.*

District Court, S. D. New York.
Oct. 13, 1932.

*Reversed 61 F.(2d) 934.

Charles Franklin, of New York City (Herbert Goldmark and Leonard H. Goldenson, both of New York City, on the brief), for complainant.

Louis Boehm, of New York City, for intervener Lillian Boehm.

Lloyd Paul Stryker, of New York City, for Holders of Ten-Year 6 Per Cent. Gold Notes Committee of Interborough Rapid Transit Co.

Breed, Abbott & Morgan, of New York City (Charles H. Tuttle, Winfred K. Petigrew, and Paris S. Russell, all of New York City, of counsel), for defendant American Brake Shoe & Foundry Co.

Hughes, Schurman & Dwight, of New York City (Charles E. Hughes, Jr., and Allen S. Hubbard, both of New York City, of counsel), for defendant William Roberts, receiver of Manhattan Ry. Co.

Chadbourne, Stanchfield & Levy, of New York City (William D. Guthrie, William Wallace, and J. Arthur Leve, all of New York City, of counsel), for defendants Dowling and Murray, receivers of Interborough Rapid Transit Co.

James L. Quackenbush, of New York City, for defendant Interborough Rapid Transit Co.

Arthur J. W. Hilly, Corp. Counsel, of New York City (F. E. Carstarphen, Edgar J. Kohler, and Harry Hertzoff, all of New York City, of counsel), for defendant New York City.

Cotton, Franklin, Wright & Gordon, of New York City (Clifton Murphy and B. C. Wright, both of New York City, of counsel), for Protective Committee of Manhattan Consolidated 4's.

Lawrence Berenson, of New York City, for complainant in action entitled Barber v. Manhattan Elevated R. R. Co., the Interborough Rapid Transit Co. and receivers of Interborough Rapid Transit Co.

Dills, Muecke & Schelker, of New York City (Duane R. Dills, of New York City, of counsel), for defendant Manhattan Ry. Co.

Elon S. Hobbs, of New York City, for independent security holders who have not filed their securities with Protective Committee, but have filed petition.

Marshall & Wehle, of New York City (Louis B. Wehle, of New York City, of counsel), for Protective Committee for Manhattan Ry. Co. 7 Per Cent. Guaranteed Stock.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Edwin S. S. Sunderland, of New York City, of counsel), for 7 Per Cent. Noteholders' Committee and 5 Per Cent. Bondholders' Committee, both committees of Interborough Rapid Transit Co. securities.

John J. Curtin, of New York City (George H. Stover, of New York City, of counsel), for Transit Commission.

Davies, Auerbach & Cornell, of New York City (Harold C. McCollom, of New York City, of counsel), for Central Hanover Bank & Trust Co.

The following members of the bar appeared on the argument of these motions and submitted oral arguments or briefs therein:

Charles Franklin and Louis Boehm, both of New York City, on behalf of the complainant in equity 71—153, and Lillian Boehm, intervener.

William D. Guthrie and William Wallace, both of New York City, for receivers of Interborough Rapid Transit Co.

Charles E. Hughes, Jr., and Allen S. Hubbard, both of New York City, for William Roberts, receiver of the Manhattan Ry. Co.

Charles H. Tuttle, Winfred K. Petigrue, and Paris S. Russell, all of New York City, for American Brake Shoe & Foundry Co., complainant in equity 70—364.

Lloyd P. Stryker, of New York City, for Committee of Noteholders of Ten-Year 6 Per Cent. Gold Notes of Interborough Rapid Transit Co.

Elon S. Hobbs, of New York City, pro se and representing independent holders of securities.

Edwin S. S. Sunderland, of New York City, for 7 Per Cent. Noteholders' Committee and 5 Per Cent. Bondholders' Securities.

Harold C. McCollom, of New York City, for Central Hanover Bank & Trust Co.

WOOLSEY, District Judge.

These motions are granted to the extent here indicated:

A (1) The counsel for the moving parties may present to me for signature an order providing for the consolidation of the

cause of American Brake Shoe & Foundry Company v. Interborough Rapid Transit Company, Manhattan Railway Company, Intervener, equity No. 70—364, with this cause of Johnson v. Manhattan Railway Company, equity No. 71—153, under the following short caption: "In the matter of the Interborough-Manhattan Receivership Proceedings."

(2) After the order of consolidation thus granted is signed and filed, counsel for the moving parties may present to me for signature a further order providing that all the orders made by Judge Manton in this court in the cause of American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co. (Manhattan Ry., Intervenor); equity No. 70—364, dealing both with the Interborough Rapid Transit Company and the Manhattan Railway Company, be vacated and set aside as wholly void and of no juridical effect.

The order which I am asked to sign must, however, contain a provision that its operation is suspended for a period of twenty days to enable the defendants herein to appeal from this decision if they are so advised.

B (1) I deny the motions, without prejudice, in so far as they request the appointment of new receivers at the present time, but, if no appeal is taken within twenty days, or if, after the decision in such appeal as may be taken within that time, my decision is affirmed, a new application for such appointment may be made in pursuance of General Rule 11-a of this court to the judge at that time assigned to hold the bankruptcy and motion part of the business of this court.

(2) I deny, for want of jurisdiction, these motions in so far as they request me to vacate the orders made and signed on August 25, 1932, by Judge Manton as senior Circuit Judge, because I can only deal with the effect of these orders in this court. This I have hereinafter done.

(3) I have already denied the application of the petitioners to have these motions heard by the eight judges of the District Court sitting en banc.

I. This proceeding involves important questions of federal court administration which are, I believe, of first impression. The validity and effect of orders of designation and division of business made by Hon. Martin T. Manton, as the senior Circuit Judge of the Circuit Court of Appeals for this circuit, are challenged by the plaintiffs.

It may be appropriate, although it should be unnecessary, to remark in limine that the situation out of which this challenge arises was not created or contributed to in any way by the United States District Court for the Southern District of New York or by any judge thereof.

II. As a preface to the statement of the facts, I think it would be helpful to express my views as to the relation between the Circuit Court of Appeals and the District Court under the Judicial Code, now contained in title 28 of the United States Code (28 USCA), for that will give a background against which the facts must be seen and the appropriateness of the relief sought by the complainant determined.

Section 18 of the Judicial Code (title 28, United States Code, § 22 [28 USCA § 22]), provides under the heading, "Circuit Judge Designated to Hold District Court—Powers," inter alia: "The Chief Justice of the United States, or the circuit justice of any judicial circuit, or the senior circuit judge thereof, may, if the public interest requires, designate and assign any circuit judge of a judicial circuit to hold a district court within such circuit."

Section 118 of the Judicial Code (title 28, United States Code, § 213 [28 USCA § 213]) deals with Circuit Judges, and, after prescribing their number in each circuit and their appellate duties, provides, inter alia: "Nothing in this section shall be construed to prevent any circuit judge holding district court or otherwise, as provided by other sections of the Judicial Code."

Section 120 of the Judicial Code (title 28, United States Code, § 216 [28 USCA § 216]) deals with the judges who may sit in the Circuit Court of Appeals, and provides that the District Judges may sit in that court when enough appellate judges are not available.

In addition to the provisions cited, there are also the provisions contained in title 28, United States Code, § 47 (28 USCA § 47), and in title 28, United States Code, § 380 (28 USCA § 380), involving, respectively, suits challenging orders of the Interstate Commerce Commission and suits in which it is alleged that a state statute is unconstitutional, and providing for the convening of a three-judge court, containing at least one Circuit Judge, to hear such causes.

It is observable, however, by reading the provisions of title 28, United States Code, "Judicial Code and Judiciary," that, although by the provisions above mentioned the organization of the federal courts is made very plastic, so far as the use of their judicial personnel is concerned, the District Courts and the Circuit Courts of Appeals are distinct courts, that the former are the only instance

courts, and that the latter have appellate jurisdiction only.

Each court has, of course, its own intramural administrative problems arising in connection with the arrangement and dispatch of the business which comes before it. When the District Court is functioning within its lawful ambit, these problems constitute what I may perhaps properly call its domestic economy, and are solely its own concern.

Control over its business is an inherent right of any body of judges which constitutes a court. If those judges are going to function at their best, they must, within the law, be masters in their own house, for the wisest outsider, it may safely be assumed, cannot possibly be so aware of the problems which face them as are the judges who are carrying the heavy responsibility of doing the court's business from day to day.

This obvious fact is explicitly recognized by title 28, United States Code, § 731 (28 USCA § 731), which gives the District Courts power to make rules of practice, and implicitly recognized also by section 23 of the Judicial Code, title 28, United States Code, § 27 (28 USCA § 27) which provides that in districts having more than one District Judge the District Judges may agree on the division of business for the district, and allows the intervention of the senior Circuit Judge only when the several District Judges in the district are unable to agree on the division of business therein. In such event the aid of the senior Circuit Judge is invoked under section 23 of the Judicial Code, as an outsider, who by statute may be called on by the District Court as a peacemaker between its judges.

III. The facts, so far as they are relevant in connection with these proceedings, are as follows:

On June 29, 1932, a schedule entitled "Assignment of judges and division of work of the United States District Court for the Southern District of New York for the months of July, August and September, 1932," signed by all the eight judges of the District Court, was filed in the clerk's office thereof.

At the same time, on the same date, a schedule was filed entitled "Assignment of United States District Judges, S. D. of N. Y. October, 1932, to June, 1933," showing the division of work in this court for the court year which has just begun. This also was signed by all the District Judges.

On June 30, 1932, the General Rules of this court were revised by the addition thereto of two rules, called Rule 1-a and Rule 11-a, and an appropriate order making the revision was entered in the clerk's office on said date providing that the new rules should become effective on July 1, 1932. This order was signed by all the eight District Judges.

These rules were as follows:

"1-a. Any judge designated to sit in the District Court for the Southern District of New York shall do such work only as may be assigned to him by the senior district judge."

"11-a. All applications for the appointment of receivers in equity causes, in bankruptcy causes and any other causes (except where a receiver in bankruptcy may be appointed by a referee as provided in the bankruptcy rules), shall be made to the judge assigned to hold the bankruptcy and motion part of the business of the court and to no other judge."

By the assignment of the summer business, Judge Patterson was assigned to deal with bankruptcy and general motions between August 15, 1932, and August 29, 1932, inclusive.

On August 25 and 26, 1932, when the first receivership order was signed by Judge Manton, Judge Patterson was in court or in his chambers throughout the day ready to receive any applications for equity receiverships which might be made, and functioning in all respects as a de jure judge in the part to which he was assigned.

On August 25 Judge Manton, in his capacity as senior Circuit Judge of the Second Circuit, signed two orders.

The first of these orders, for convenience herein referred to as the "Designation Order," reads in full as follows:

"Whereas, the undersigned as Senior Circuit Judge of the Second Judicial Circuit of the United States, is empowered and authorized by law, pursuant to the provisions of title 28, section 22 of the Code of Laws of the United States of America, if the public interest so requires, to designate and assign any circuit judge of the Second Judicial Circuit to hold a District Court within such circuit; and

"Whereas, the undersigned, as such senior circuit judge, finds that the public interest requires that Martin T. Manton, a Circuit Judge of the Second Judicial Circuit, be designated and assigned as a circuit judge of this judicial circuit to hold a District Court within such circuit, it is hereby

"Ordered, adjudged and decreed, that the said Martin T. Manton be, and he hereby is,

designated and assigned to hold a District Court of the United States for the Southern District of New York, Second Judicial Circuit, during the period beginning August 25, 1932, and particularly to hear and determine all applications and proceedings in the matter entitled American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Company, and for such further time as may be required to complete unfinished business.

"Dated New York, August 25, 1932.

"Martin T. Manton,

"Senior Circuit Judge for the Second Judicial Circuit."

The second of these orders, for convenience herein referred to as the "Division of Business Order," reads as follows:

"In the United States Circuit Court of Appeals, Second Judicial Circuit.—In the matter of the division of business and assignment of cases for trial in the Southern District of New York.—Order.

"Whereas Martin T. Manton has been duly designated and assigned to hold a District Court of the United States for the Southern District of New York within this Second Judicial Circuit for a period of thirty days from this day; and

"Whereas section 23 of the Judicial Code (March 3, 1911, chap. 231, sec. 23, 36 Stat., 1090) provides that 'In districts having more than one district judge, the judges may agree upon a division of business and assignment of cases for trial in said district; but in case they do not so agree, the senior circuit judge of the circuit in which the district lies shall make all necessary orders for the division of business and the assignment of cases for trial in said district'; and

"Whereas Martin T. Manton, a Circuit Judge of the Second Judicial Circuit of the United States, designated and assigned to hold a District Court in the Southern District of New York in said circuit, and acting as district judge for the Southern District of New York in this Second Judicial Circuit, does not agree upon the division of business and assignment of cases for trial in the Southern District of New York as provided in and pursuant to the rules of court for the Southern District of New York heretofore adopted by the then United States District Judges for the Southern District of New York; it is hereby

"Ordered, adjudged and decreed that, for a period of thirty days beginning with this day, all applications for the appointment of receivers in equity causes in the Southern District of New York may be made not only to the district judge designated to hear such application pursuant to Rule 11-a of the General Rules of the District Court for the Southern District of New York, but also to Martin T. Manton, Circuit Judge designated to act as District Judge to hold a District Court for the Southern District of New York.

"Dated New York, August 25th, 1932.

"Martin T. Manton."

These orders were both filed in the District Court on August 26, 1932.

On August 26, 1932, a bill of complaint was filed by the American Brake Shoe & Foundry Company, as a creditor against the Interborough Rapid Transit Company as defendant, and asking for a receivership in equity on the ground that it was at the time in such a condition that it could not discharge its then existing or impending obligations and needed the protection of the court.

On the same day the defendant filed an answer admitting all the allegations of the complaint and consenting to and joining in the request for the appointment of a receiver.

I am told by Judge Knox, who was here at the time, that Judge Manton did not apply to him under General Rule 1-a for an assignment, either on August 25 or August 26. I am told by Judge Patterson that there was not any application made to him for a receivership order in the cause of American Brake Shoe & Foundry Company v. Interborough Rapid Transit Company, equity No. 70—364, at any time on August 25 or August 26.

On August 26 Judge Manton made and signed an order appointing Victor J. Dowling, Esq., and Thomas E. Murray, Jr., Esq., temporary receivers of the Interborough Rapid Transit Company, and provided therein that all interested parties should, on September 22, 1932, show cause why the receivership should not be continued pendente lite.

On August 26, 1932, an order was made by Judge Manton appointing Messrs. Chadbourne, Stanchfield & Levy attorneys for Victor J. Dowling and Thomas E. Murray, Jr., receivers of the Interborough Rapid Transit Company.

On September 6, 1932, on petition of the Manhattan Railway Company, verified the 2d day of September, 1932, for an extension of the receivership to it, Judge Manton made an order appointing William Roberts, Esq., temporary receiver of the Manhattan Railway Company, with a provision for interest-

ed parties to show cause on September 22 why the receivership should not be continued.

On September 7, 1932, an order was made by Judge Manton appointing Messrs. Hughes, Schurman & Dwight attorneys for William Roberts, receiver of the Manhattan Railway Company.

On September 22 there was a hearing before Judge Manton under the show cause provision of the receivership orders. On September 29 an order was filed which Judge Manton had made on September 28, continuing the receiverships pendente lite, and providing that the 1932 equity term of this court be extended until the termination of the proceedings under the receiverships, or, in any event, for a period of three years from September 28, 1932, with leave to apply for further extension thereof, and with reservation of full jurisdiction in the premises.

Turning now to the Johnson Case, equity No. 71—153, the relevant chronology therein is as follows:

On September 21, 1932, Benjamin F. Johnson, a citizen and resident of the state of Kentucky, filed a bill of complaint herein as a stockholder owning 100 shares of the Manhattan Railway Company, of the par value of $10,000. It prayed substantially the same relief asked for in the orders to show cause now before me, and, in addition, that there should be an accounting by the Interborough to the Manhattan Railway Company for all sums due and owing to it.

On the same day an order was made by Judge Caffey allowing Lillian Boehm to intervene as a party plaintiff therein.

The said intervener alleges that she is the owner of 1,400 shares of the capital stock of the Manhattan Railway Company, having a par value of $140,000, and $117,000 par value of first mortgage 4 per cent. bonds of the defendant Manhattan Railway Company, which securities she has owned for more than a year last past, and also is the owner of $60,000 of first and refunding 5 per cent. bonds of the Interborough Rapid Transit and $35,000 of its 7 per cent. notes.

The first of the orders to show cause before me was granted by Judge Caffey on September 21; the second was granted by Judge Bondy on October 1; and the last by me on October 3.

All these orders were returnable on the general motion calendar on October 4, 1932, and on that day the prayer which was contained in all three of these orders to show cause to the effect that the District Court should sit en banc to hear these motions was argued and denied by me.

IV. In my enumeration of the various steps taken in this proceeding, I did not mention the fact that on March 20, 1930, Judge Manton, as senior Circuit Judge, made and filed an order in this court which reads as follows:

"United States District Court, Southern District of New York.

"In order to meet the requirements of the public interest, and under the authority conferred by section 22 of title 28 of the Code of Laws of the United States, I hereby designate and appoint United States Circuit Judge Martin T. Manton of the Second Circuit to hold at any time a session or sessions of the District Court for the Southern District of New York for the trial of causes and the hearing and disposition of motions, petitions for naturalization, and such ex parte and other business as may come before me.

"Dated March 20, 1930.

"Martin T. Manton,
"Senior Circuit Judge of the Second Circuit."

The reason why this order was not mentioned in the statement of facts is that it seems to be the settled law that such designation did not make Judge Manton a District Judge. It only gave him authority as Circuit Judge to hold a District Court of the United States. Craig v. Hecht, 263 U. S. 255, 274, 44 S. Ct. 103, 68 L. Ed. 293. Consequently it cannot be successfully argued that under that order he was given such a status in the District Court as to give him a right to participate in the division of business of the District Court, or in its rule making.

I think that such a general blanket order of designation is merely an order to provide against possible unexpected emergencies, and it is not in any way involved, either directly or indirectly, in the present situation. I come to that conclusion not only because, commencing with Judge Lacombe, such blanket orders have been entered by every senior Circuit Judge, but also because of the fact that Judge Manton did not purport to act under that order, but as senior Circuit Judge he made two special orders on August 25 designating himself to hold a District Court in the Southern District of New York, beginning August 25, to hear applications in the American Brake Shoe & Foundry Case, and declaring, after such a designation, that there was a disagreement between him and the District Judges as to the division of business, and that under section 23 of the Judicial Code, he, as senior Circuit Judge, solved this disagree-

ment by assigning himself to sit with them as a motion judge.

This, I hold, was a construction by Judge Manton himself that the order of March 20, 1930, was merely a blanket order, and that General Rules 1-a and 11-a of the District Court, duly passed on June 30, 1932, and effective July 1, 1932, prevented him from operating under the blanket order after that date.

V. It has been contended that the Johnson bill was not a valid stockholder's bill for a receivership in equity on the ground that it failed to allege, in compliance with Equity Rule 27 of the Supreme Court (28 USCA § 723), that the plaintiff was a stockholder at the time of the transactions of which he complains. This objection is met by the allegations of paragraph 4 of the complaint.

Further objection is made that the bill fails to set forth the complainant's effort to secure relief through the corporate directors. This is adequately met by the allegations of paragraphs 24-a and 24-b of the complaint, which shows that, by reason of the interlocking directorate of the Manhattan Railway Company and the Interborough Rapid Transit Company, a request for action by the directors would have been futile.

It must be observed also that, according to the allegations of the bill, the Manhattan Railway Company is without any operating personnel and is entirely in the hands of the management of the Interborough.

The bill asks, accordingly, as further relief, for an accounting to the Manhattan Railway Company by the Interborough Rapid Transit Company.

By the intervention as plaintiff of Lillian Boehm, a secured creditor owning secured notes of the Interborough and first mortgage bonds constituting a first lien upon the property of the Interborough, there is a sufficient basis in the prayer of the Johnson bill for the appointment of receivers, not only of the Manhattan Railway Company, but also of the Interborough Rapid Transit Company.

In my opinion the bill of complaint is not demurrable, but, on the contrary, sets forth good grounds in equity for the relief it asks. That is sufficient for the purpose of the plaintiffs' present motions.

VI. I now have to deal with the locus standi of the plaintiffs to ask for the relief sought in their orders to show cause in a proceeding different from that in which the receivers were appointed.

It is earnestly contended by the plaintiff and intervener in the Johnson Case that it cannot properly be claimed that the attack they are making on the orders made by Judge Manton in the American Brake Shoe & Foundry Company Case is a collateral attack. Indeed, it seems to me that there is a great deal to be said for their contention, for the challenge to the receivers sounds in quo warranto.

But each cause is, of course, separate from any other cause, and is conducted through its own appropriate procedural course to its appropriate judgment or decree, and there is in my mind a residuum of doubt whether, so long as they remain separate causes, an order could properly be made in the Johnson Case, equity No. 71—153, which would affect the receivership orders and the other orders made in the American Brake Shoe & Foundry Company Case, equity No. 70—364.

It seems to be very easy, however, to avoid any such possible procedural difficulty; for it often happens that two cases are so related as to make it appropriate that, as a matter of wise administration, they be consolidated.

If ever there was an instance where an order of consolidation would be appropriate, it seems to me that I have it before me here, for in the Johnson Case, equity No. 71—153, the defendants named are the parties in the American Brake Shoe & Foundry Company Case, equity No. 70—364, and the receivers who were appointed therein. All these parties have been heard by me on this proceeding, and it is clear that there should be a consolidation of the two cases, equity No. 70—364 and equity No. 71—153. Both cases are in this court, and I have both the power and the right to make such an order.

Furthermore, such a consolidation by an order of the court on its own initiative is not an intervention by the complainants herein, Mr. Johnson and Mrs. Boehm, which would require them to subordinate themselves to the procedural situation existing in the American Brake Shoe & Foundry Case, but they will still remain at large to challenge the jurisdiction of Judge Manton to make orders in that case.

Accordingly, the solicitors for the complainants in the Johnson Case may present to me an order providing for the consolidation of the American Brake Shoe & Foundry Case, equity No. 70—364, with the Johnson Case, equity No. 71—153.

VII. I turn now to the merits of the questions involved.

1. The only question which can properly be dealt with by me is whether Judge Manton had any jurisdiction whatever to appoint the receivers under the orders above mentioned.

There is not any question but that this court had jurisdiction in equity No. 70—364 of the subject-matter of the litigation, for the necessary diversity of citizenship exists and the amount involved is far more than that required by the statute.

Furthermore, there is not any question but that this court had personal jurisdiction of the parties in equity No. 70—364. The Interborough Rapid Transit Company appeared generally and joined in the complainant's prayer for the appointment of a receiver, and the Manhattan Railway Company intervened in the proceeding and prayed for the extension of the receivership to it.

Thus far the usual questions of jurisdiction were solved by the parties unaided, and the cause became effective as a basis for judicial action by this court when the papers were filed in the office of the clerk thereof.

When we come, however, to the making of the receivership orders, there is another and a very unusual question of jurisdiction involved; that is, whether the exercise of the jurisdiction came within the judicial competence of the judge who purported to exercise it.

For obviously the judicial function in any case can only be effectively exercised by a judge whose status in the court in which he acts is either that of a judge de jure, or at least of a judge de facto. It will not suffice if the judge who purports to act as such is a mere usurper of judicial power.

Into which category did Judge Manton's status fall?

2. The rule-making power of the District Courts is vested in them by section 731 of title 28 of the United States Code, 28 USCA § 731 (R. S., § 918), which reads as follows:

"§ 731. *Rules of practice in district courts.* The district courts may, from time to time, and in any manner not inconsistent with any law of the United States, or with any rule prescribed by the Supreme Court under section 730 of this title, make rules and orders directing the returning of writs and processes, the filing of pleadings, the taking of rules, the entering and making up of judgments by default, and other matters in vacation, and otherwise regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

It was under the power thus vested in it that the District Court for the Southern District of New York made and promulgated General Rules 1-a and 11-a. I hold that these rules were not in any way inconsistent with any law of the United States or with any rule of the Supreme Court, and that consequently they were valid rules and as such had the juridical status of statutes. Cf. Weil v. Neary, 278 U. S. 160, 169, 170, 49 S. Ct. 144, 73 L. Ed. 243; Galveston Dry Dock & Construction Co. v. Standard Dredging Co. (C. C. A.) 40 F.(2d) 442, 444.

It is urged on me that Rule 1-a is a limitation on the power given to the senior Circuit Judge under section 18 of the Judicial Code (title 28, United States Code, § 22 [28 USCA § 22]) to make designations of Circuit Judges to hold a District Court, and hence is inconsistent with a law of the United States. I do not agree.

Section 18 empowers a senior Circuit Judge to designate a Circuit Judge to hold a District Court, but it does not empower him to designate the case which the Circuit Judge is to hear or the part in which he is to sit.

It is urged on me that General Rule 11-a is an equity rule. It is said that Rule 4 of the Equity Rules of this court, which provides that the judge who appoints a receiver in a cause shall thereafter hear all matters in that case, is in pari materia with General Rule 11-a; that consequently General Rule 11-a must be an equity rule, and that, as General Rule 11-a has not had the concurrence of a majority of the circuit judges of this circuit, as required for equity rules of the District Court by the Supreme Court Equity Rule 79 (28 USCA § 723), it is invalid.

I do not agree that General Rule 11-a is an equity rule, and consequently I hold that the fact that it has not had the concurrence of a majority of the Circuit Judges does not affect its validity.

Rule 11-a merely tells where attorneys have to go to get a receiver appointed, and it does not deal with any practice of any kind in equity. It simply points to the door of the room where applications for receiverships must be made. Practice in equity in receivership cases only commences after the making of the order of appointment, which in consent cases is analogous to the issuance of process, for then only does an equity receivership based on consent begin.

3. It should also be observed here that the validity of rules of a District Court cannot be determined by the administrative order

818

of a senior Circuit Judge. Their validity can only be tested judicially in a proper case, and, unless so tested and invalidated, they are binding on all who do business in the court which made them.

 4. Judge Manton's designation order of August 25, 1932, which was aimed at Rule 1-a, was, I hold, entirely ineffectual to suspend or otherwise affect that rule. First, it was an improper procedure for the purpose, as has just been stated; and, second, in the order itself Judge Manton exceeded his statutory authority when he named himself to deal with the American Brake Shoe & Foundry Case in the District Court. For section 18 of the Judicial Code, under which he purported to act, does not provide for any such selective designation or any such focusing of judicial activity in the District Court.

5. Judge Manton's second order of August 25, 1932, which I have called the division of business order, involved an attempt to get around General Rule 11-a, which requires all applications for receiverships in equity cases to be made only to the judge assigned to hold the bankruptcy and motion part of the business of the court, and to no other judge.

After Judge Manton had designated himself to hold a District Court for a particular purpose by his first order, he reported to himself, according to his second order, that he found himself in disagreement with the District Judges in this district, and, invoking section 23 of the Judicial Code (title 28, United States Code, § 27 [28 USCA § 27]), he made an order for the division of business whereby he designated himself to sit with the regular motion judge, and provided that all applications for the appointment of receivers in equity might, for the period of thirty days, be made to him as well as to the regular motion judge.

On August 26, 1932, these administrative orders of August 25 were filed in the District Court bound together under one cover, and on the same day the order appointing receivers for the Interborough was made.

Section 23 of the Judicial Code (title 28, United States Code, § 27 [28 USCA § 27]), which was invoked to support the division of business order, reads as follows:

"*Districts with more than one judge; division of business.* In districts having more than one district judge, the judges may agree upon the division of business and assignment of cases for trial in said district; but in case they do not so agree, the senior circuit judge of the circuit in which the district lies, shall make all necessary orders for the division of business and the assignment of cases for trial in said district."

The only reported case which I have been able to find dealing in detail with the operation of the provisions of this section of the Judicial Code is Case v. United States, 14 F. (2d) 510, which was decided by the Circuit Court of Appeals for the Eighth Circuit. There a disagreement as to the division of business had arisen between the two District Judges for the Eastern District of Oklahoma.

The procedure there followed, as is shown in the report of the case, 14 F.(2d) at page 511, was that the disagreeing District Judges submitted their disagreement to the senior Circuit Judge, Judge Sanborn, then of the Eighth Circuit, who thereupon, reciting the disagreement and the submission thereof, made an order which in substance divided the Eastern District of Oklahoma into two territorial divisions, and made a division of business between the two divisions of the district thus constituted.

It was held in Case v. United States (C. C. A.) 14 F.(2d) 510, that a conviction in a criminal case in the division where the case did not rightfully belong under that order was a nullity, and the conviction was set aside.

 It seems to me to be perfectly clear that normally, as a disagreement inter sese as to the division of business between the District Judges of a district can only arise in the District Court and between them, the request for aid in settling their disagreement should be initiated by them, and should come from them to the senior Circuit Judge as the third party named by section 23 with statutory power to act in settlement of their dispute.

If that is the normal method by which section 23 of the Judicial Code should be invoked, there certainly would have to be a very marked case of disagreement, which amounted at least to a public scandal, to warrant a departure from that method and to justify the unasked intervention of the senior Circuit Judge.

Now what have we here?

As I have set forth above, on June 29, 1932, there was filed with the clerk an agreement for the division of business for the past summer signed by the eight judges of this court.

By that agreed division Judge Patterson was to sit in bankruptcy and general motions from August 15, 1932, through and including August 29, 1932.

There was also filed with the clerk on the same day an agreement, signed by all the judges of this court, for the division of business for the court year just beginning, October, 1932, to June, 1933.

■ Accordingly, what I have called the domestic economy of this court was wholly tranquil. There was no disagreement of any kind among the judges as to the division of business. Therefore the condition precedent, of disagreement among the District Judges, on which alone the senior Circuit Judge had a right to step in and make an order of division of the business of the District Court, did not exist, and Judge Manton's order of designation of business of August 25, 1932, was entirely void so far as its having any effect on the rules of this court or the division of business in this court.

■ The whole matter may be summed up by saying that, when a Circuit Judge is designated to hold a District Court, and proceeds to sit therein, he is acting as a District Judge and must obey its rules. He does not carry with him down to the District Court any appellate attributes which put him above the other District Judges of the District Court where he may be functioning. His status pro hac vice is the same as theirs, and his decisions, like theirs, are subject to the appellate jurisdiction of the Circuit Court of Appeals.

6. Judge Knox informs me that no request was made to him by Judge Manton under Rule 1-a for an assignment to deal with the applications of the American Brake Shoe & Foundry Company for the receivership of the Interborough.

Judge Patterson informs me that there was not any application for a receivership order made before him in the American Brake Shoe & Foundry Company Case, equity No. 70—364, on August 25 or August 26, although he was at that time sitting in court or in chambers and functioning as a judge of the motion part ready to deal with all such applications.

■ 7. I hold, therefore, that Judge Manton never secured any assignment to sit in the motion part of the District Court.

His orders of August 25 were ineffectual for that purpose, and Judge Knox, as senior District Judge, did not assign him to the motion part under Rule 1-a.

I hold also that Judge Patterson was the only judge of this court who had the power or right to entertain the application for the receivership here in question at the time when it was made.

8. The juridical status of orders made by Judge Manton in this court in equity No. 70—364, under the circumstances above described, must now be considered.

It must be noted again that, at the time when Judge Manton, on August 26, made the order appointing receivers for the Interborough Rapid Transit Company, Judge Patterson was sitting and functioning as motion judge de jure in the bankruptcy and motion part of this court.

It is urged upon me, nevertheless, that Judge Manton had the status of a de jure judge, but that, if he did not, he should be held to have had the status of a motion judge de facto, with the consequence that his orders should, as a matter of public policy, be allowed to stand as valid. Norton v. Shelby County, 118 U. S. 425, 441, 442, 6 S. Ct. 1121, 30 L. Ed. 178; Ball v. United States, 140 U. S. 118, 128, 11 S. Ct. 761, 35 L. Ed. 377; McDowell v. United States, 159 U. S. 596, 601, 16 S. Ct. 111, 40 L. Ed. 271; Ex parte Henry Ward, 173 U. S. 452, 454, 456, 19 S. Ct. 459, 43 L. Ed. 765, are cited.

■ It is true that those cases deal with the status of a judge de facto, but they have not any application here, for there cannot be a de facto judge acting or purporting to act in the court or in the part of the court in which a de jure judge is present and functioning. Cf. United States v. Alexander (D. C.) 46 F. 728, 729; Hamlin v. Kassafer, 15 Or. 456, 459, 15 P. 778, 3 Am. St. Rep. 176; Boardman & Perry v. Halliday, 10 Paige (N. Y.) 223, 232; Cohn v. Beal, 61 Miss. 398, 399; Mechem on Public Officers, §§ 322 and 323, p. 216; and see, on the general subject, Conover v. Devlin, 15 How. Prac. (N. Y.) 470, 476-479; Morgan v. Quackenbush, 22 Barb. (N. Y.) 72, 80; 29 Cyc. p. 1391, footnote 60.

This seems to me to be a proposition almost as obvious as the fact that two bodies cannot occupy the same space at the same time.

I am aware that the cases to which I have just referred involved statutory offices in the ordinary sense of that term. The office in question here, that of motion judge, is not such an office, but the analogy is perfect, because by the rules of this court there is only one motion judge in each motion term.

There are three possible categories into which, from the point of view of their relation to a court, judges may be divided: (1)

820

Judges de jure; (2) judges de facto; and (3) usurping or intruding judges. Cf. Mechem on Public Officers, §§ 321–323, pp. 215, 216.

A judge should, of course, not vacate the order of another judge of the same rank whether that other judge, in making the order, was a judge de jure or was acting as a judge de facto. Otherwise litigants would be made the victims of judicial controversialists, and the administration of justice would inevitably tend to become chaotic.

But with a usurping or intruding judge, the rule is different, for the orders of such a judge are wholly void [cf. United States v. Alexander (D. C.) 46 F. 728, 731, and, on the general principle involved, also, Manning v. Ketcham (C. C. A.) 58 F.(2d) 948, 949], and tend to mislead the public as to the status of litigations in the court.

Consequently, in order to prevent chaotic conditions and the perpetuation by the intruder of his irregular procedure, a judge de jure may always vacate and declare void the orders of a usurping or intruding judge. Cf. suggested analogy in Norton v. Shelby County, 118 U. S. 425, 442, 6 S. Ct. 1121, 30 L. Ed. 178. His so doing is ultimately for the benefit of the litigants involved in the cause wherein the orders are vacated, and may, if his act is timely, prevent irreparable injury to one or all of them. This is especially true of the situation here involved, for a consent receivership in equity, not being the result of a controversy but of an agreed situation, should have a jurisdictional foundation beyond suspicion before a court takes over the operation of the estate.

As a result of the most careful reflection of which I am capable on the very unusual situation before me, I hold, for the reasons above given, that Judge Manton's orders in this court appointing receivers of the Interborough Rapid Transit Company and the Manhattan Railway Company, in equity No. 70—364, and all other proceedings had by Judge Manton in this court therein were not proceedings before a judge de jure or before a judge de facto, but were acts which involved usurpation of power which he had not and, consequently, were all coram non judice and wholly void and of no effect.

VIII. However, I do not at the present time grant the request to appoint new receivers, for it seems to me that there could not possibly be any more unfortunate situation than to have two sets of receivers contending between themselves for possession of the great property here involved.

But, if no appeal from the orders entered herein is taken within twenty days, or, if my decision herein is affirmed on such appeal as may be taken within that time, after the return of the mandate from the Appellate Court to this court and its filing here, application may be made in pursuance of Rule 11-a to the judge sitting in the motion part for the appointment of new receivers.

Thus there will not be any interruption of or confusion in the operation of the railroads pending the settlement of the questions herein involved.

IX. Orders embodying the provisions indicated in my formal decision at the beginning of this opinion may be presented to me for settlement after three days' notice, on Tuesday, October 18, 1932, at 2:30 p. m., in my chambers, room 1542, Woolworth building, No. 233 Broadway, New York City.