## AMERICAN BRAKE SHOE & FOUNDRY CO. v. INTERBOROUGH RAPID TRANSIT CO.

District Court, S. D. New York.
Oct. 18, 1932.

Charles Franklin, of New York City, for plaintiff Benjamin F. Johnson et al.

Louis Boehm, of New York City, for Lillian Boehm, intervener.

Breed, Abbott & Morgan, of New York City, for the American Brake Shoe & Foundry Co.

James L. Quackenbush, of New York City, for Interborough Rapid Transit Co.

Hughes, Schurman & Dwight, of New York City, for William Roberts, receiver of Manhattan Ry. Co.

Hornblower, Miller, Miller & Boston, of New York City, for receivers of Interborough Rapid Transit Co.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, for the 7 Per Cent. Noteholders' Committee and 5 Per Cent. Bondholders' Committee, both committees of Interborough Rapid Transit Co. securities.

Root, Clark & Buckner, of New York City, for committee of Interborough Rapid Transit Co. Ten-Year 6 Per Cent. Gold Notes.

Cotton, Franklin, Wright & Gordon, of New York City, for Protective Committee of Manhattan Consolidated 4's.

Davies, Auerbach & Cornell, of New York City, for Central Hanover Bank & Trust Co.

Milbank, Tweed, Hope & Webb, of New York City, for Chase Nat. Bank, trustee under Manhattan Ry. Co. second mortgage.

Marshall & Wehle, of New York City, for Harold Palmer et al., acting as Protective Committee for 7 Per Cent. Guaranteed stock of Manhattan Ry. Co.

MANTON, Circuit Judge.

Heretofore and on August 26, 1932, acting as Senior Circuit Judge of the second circuit in the above-entitled cause E 70—364, brought by the American Brake Shoe & Foundry Company as complainant, duly pending in equity in the District Court for the Southern District of New York, I appointed Messrs. Victor J. Dowling and Thomas E. Murray, Jr., as temporary receivers of the Interborough Rapid Transit Company, and by order entered on September 29th, after due notice and full opportunity to be heard by all parties in interest, I appointed them as permanent receivers. Thereafter and from time to time I made various orders which were necessary for the conservation and protection of the property so placed in the charge of said receivers and the due performance of their duties to the public in the care, management, and operation of the largest street railway system in this circuit, and which consisted of a railway system operated in both the Southern and Eastern Districts of New York, representing a capitalization and investment of over $300,000,-000 with respect to the Interborough Company and the Manhattan Elevated Company, and a capitalization and investment of over $300,000,000 by the city of New York. I also from time to time granted leave to intervene in said cause to representatives of the holders of the first and refunding mortgage 5 per cent. gold bonds of the Interborough Rapid Transit Company, amounting to more than $132,000,000 of the holders of the 10-year secured convertible 7 per cent. gold notes of said company, amounting to more than $31,672,000 of the holders of the 10-year 6 per cent. gold notes of said company amounting to more than $10,500,000, and I likewise granted leave to intervene in said cause to the Manhattan Elevated Railway Company and representatives of its consolidated mortgage gold 5 per cent. bonds amounting to more than $40,683,000, and of its 7 per cent. guaranteed stockholders amounting to more than $4,351,000, and appointed William Roberts as receiver thereof. I further caused to be entered other orders in connection with the administration of said receivership and the protection and conservation of its extensive railway properties, extending as indicated above into the Eastern

District of New York as well as the Southern District.

The said receivers Messrs. Dowling and Murray appointed by me as aforesaid have now presented to me their petition praying for instructions with respect to two orders entered by District Judge Woolsey on October 18th, the one bearing the caption or title of "Benjamin F. Johnson, Complainant v. Manhattan Railway Company et al." (D. C.) 1 F. Supp. 809, with the docket or page number E 71—153, and the other bearing the caption or title of "In the Matter of the Interborough-Manhattan Receivership Proceedings in Equity" (D. C.) 1 F. Supp. 828, with the same docket and page number, namely, E 71—153.

The receivers report to me that in the first-mentioned order entitled in the suit of Benjamin F. Johnson, Complainant, v. Manhattan Railway Company et al., E 71—153, District Judge Woolsey on his own initiative and against the objection and protest of the defendants in said cause, the American Brake Shoe & Foundry Company, and the interveners in the said original cause E 70—364, consolidated the suit in equity so brought by the American Brake Shoe & Foundry Company as aforesaid, E 70—364, on August 26th, with the suit commenced on September 21st, by said Benjamin F. Johnson, E 71—153. The second order entered by District Judge Woolsey is entitled "In the matter of the Interborough-Manhattan Receivership Proceedings, E 71—153," and purports to adjudge and decree that all the orders entered by me as Circuit Judge in the said suit of the American Brake Shoe & Foundry Company v. Interborough Rapid Transit Company, E 70—364, "are, and each of them is, vacated and set aside as wholly void and of no juridical effect." Not only are all the orders heretofore made and ordered entered by me as Circuit Judge declared to be "wholly void and of no juridical effect," but the order goes still further and declares likewise wholly void and of no juridical effect "any and all other or further orders made by Judge Martin T. Manton on or after August 26th, 1932, in this Court, in the cause of American Brake Shoe and Foundry Company against Interborough Rapid Transit Company, Manhattan Railway Company, intervenor (Equity No. 70—364); dealing with the Interborough Rapid Transit Company, and/or the Manhattan Railway Company."

My instructions as Circuit Judge holding a District Court in the Southern District of New York, to the receivers appointed by me as aforesaid, are that, so far as practicable without imperiling the due and safe operation of the railways in their charge, due service to the public, and the protection and conservation of the property in their care and custody, they shall recognize and obey the orders so made by District Judge Woolsey so long as they remain unreversed because it would be prejudicial to the due and orderly administration of justice in this court and the public interests if one judge holding a District Court should permit even an officer of the court to disobey or disregard the order of a District Judge exercising co-ordinate jurisdiction in the same court. "Otherwise," as Judge Woolsey indeed recognizes in his opinion, "litigants would be made the victims of judicial controversialists, and the administration of justice would inevitably tend to become chaotic."

As I am of opinion that the decision of District Judge Woolsey is erroneous, and, as his action precipitates a conflict among the judges authorized by law to sit in the District Court and prejudices the immense property rights involved and now within the jurisdiction of this court and its duty to protect, I instruct said receivers Dowling and Murray promptly to prosecute an appeal from said orders of District Judge Woolsey and to instruct their solicitors to do everything in their power to expedite the hearing of such appeal to the end that the unfortunate and deplorable conflict of opinion and jurisdiction may be duly and promptly passed upon by the Circuit Court of Appeals.

My attention has been called to a statement contained in the opinion filed by District Judge Woolsey on October 13th, reading as follows: "It may be appropriate, although it should be unnecessary, to remark in limine that the situation out of which this challenge arises was not created or contributed to in any way by the United States District Court for the Southern District of New York or by any judge thereof," and I have already quoted his reference to "judicial controversialists" and his recognition of the tendency of the present situation and his challenge of my jurisdiction to render "chaotic" the administration of justice in the Southern District of New York.

Such statement, in my opinion, had nothing whatever to do with the important question of jurisdiction which came before District Judge Woolsey to hear and determine. That question presented solely the interpreta-

tion of acts of Congress conferring jurisdiction and duty upon the Senior Circuit Judge, and whilst, of course, there may be, as there is so generally, possible ground for difference of opinion, it was neither appropriate, any more than it was necessary or proper, to state in an opinion that the unfortunate challenge that has arisen as to the interpretation of statutory provisions and the jurisdiction and duty of the Senior Circuit Judge had not been created or contributed to in any way by any judge of the District Court, which expression plainly was intended to imply and impute the sole responsibility to the Senior Circuit Judge; nor was it proper or becoming for the learned District Judge to refer to "the victims of judicial controversialists" after having, as we have seen above, gratuitously and wholly unnecessarily and inexcusably exculpated himself from all blame. I deem it, therefore, my judicial duty to explain as briefly as practicable exactly how the challenge to my jurisdiction has arisen and my opinion with regard to my jurisdiction and my judicial duty to hold a District Court whenever in my judgment the public interest so requires. The due and orderly administration of justice in the federal courts and its protection of property interests involved in controversies between citizens of different states has always been a matter of supreme public interest and especially so where immense property rights of thousands of investors and extensive and far-reaching service to the public are concerned in corporate receiverships in equity.

The Federal Judicial Code provides in sections 18 and 19 (28 USCA §§ 22, 23) as follows:

Sec. 18. "The Chief Justice of the United States, or the circuit justice of any judicial circuit, or the senior circuit judge thereof, may, if the public interest requires, designate and assign any circuit judge of a judicial circuit to hold a district court within such circuit. * * *

"During the period of service of any judge designated and assigned under this chapter, he shall have all the powers and rights, and perform all the duties, of a judge of the district, or a justice of the court, to which he has been assigned (excepting the power of appointment to a statutory position or of permanent designation of newspaper or depository of funds). * * * "

Sec. 19. "It shall be the duty of the district or circuit judge who is designated and appointed under either of sections 17 to 22 of this title [USCA], to discharge all the judicial duties for which he is so appointed, during the time for which he is so appointed; and all the acts and proceedings in the courts held by him, or by or before him, in pursuance of said provisions, shall have the same effect and validity as if done by or before the district judge of the said district."

Such have been substantially the statutory provisions in force and effect since the act of Congress of March 3, 1911, except as amended in 1922 (42 Stat. 839), but at all times for more than twenty-one years, the Chief Justice, the Circuit Justice, and the Senior Circuit Judge have been vested with judicial power and under judicial duty and obligation, if the public interest so required, to "designate and assign any circuit judge of a judicial circuit to hold a district court within such circuit."

The practical interpretation of this statutory authority and judicial duty has always been that the Senior Circuit Judge may, and is in duty bound in a proper case to designate himself to hold a district court within his circuit whenever he deems that the public interest so requires, and many important receiverships throughout the United States for many years, especially of railroads, have been judicially supervised by Senior Circuit Judges. Thus, in the Second Circuit, Senior Circuit Judge Lacombe repeatedly designated and assigned himself to hold a district court, and, under such designation and assignment of himself, he appointed receivers and exercised jurisdiction over the receivership of the Metropolitan Street Railway System. Judge Ward succeeded Judge Lacombe in 1917, and similarly designated himself at least twice. When Judge Rogers became Senior Circuit Judge he followed the same practice and designated himself as did Judge Hough when he became Senior Circuit Judge on the death of Judge Rogers. I became Senior Circuit Judge in 1927, and under date of March 22, 1930, I made and filed a general designation and assignment of myself to perform this judicial duty whenever necessary or needful in the public interest, which is still in force and effect. In addition, having regard to the vast public and private property interests involved in any receivership of the Interborough Company, I made special designations and assignments of myself on August 25, 1932, to cover the litigation in equity for a receivership which I was advised by counsel was about to be instituted in the District Court against the Interborough Company.

I am informed by the Senior Circuit Judges of each of the other circuits that it has been their interpretation of the statute and their practice to designate and assign themselves to hold a district court under section 18 of the Judicial Code. I am also informed that the late Senior Circuit Judge Putnam in the First Circuit repeatedly so designated himself; that his successors Senior Circuit Judges Bingham and Dodge did likewise; that Senior Circuit Judge Buffington in the Third Circuit has frequently so designated himself; and that the same is true of the other circuits and notably in the Fourth, Seventh, Eighth, and Tenth circuits.

■ It surely cannot be that this uniform interpretation of the statute and exercise of jurisdiction in immeasurably important and far-reaching receiverships has been based on an erroneous construction or misunderstanding of sections 18 and 19 of the Judicial Code (28 USCA §§ 22, 23). It would, it seems to me, be little short of preposterous now to criticize these learned and distinguished Senior Circuit Judges and to hold that they had "no judicial competence" and were "usurpers" of judicial power and that all the orders they made were "wholly void and of no judicial effect" and that, too, in the light of the fact that, when section 18 was re-enacted as amended in 1922, the uniform practical interpretation theretofore in most, if not all the circuits, was presumably well known to Congress. Hence the re-enactment of the language "any circuit judge of the circuit" must be deemed to have approved and adopted the interpretation and uniform practice thereunder of a Senior Circuit Judge to designate and appoint himself to what has so frequently been a most burdensome task. Hecht v. Malley, 265 U. S. 144, 153, 44 S. Ct. 462, 68 L. Ed. 949; Thorn v. Browne (C. C. A.) 257 F. 519, 523, certiorari denied 250 U. S. 645, 39 S. Ct. 494, 63 L. Ed. 1187.

I notice that in District Judge Woolsey's opinion he deemed it pertinent to state that "the District Courts and the Circuit Courts of Appeals are distinct courts, that the former are the only instance courts, and that the latter have appellate jurisdiction only." Certainly no lawyer could reasonably suggest or contend the contrary. But this statement in the opinion was probably designed to be in accord with the position taken by the Senior District Judge Knox who, on behalf of himself and his colleagues, wrote me under date of July 12th: "Furthermore, it is difficult to see how a circuit judge assigned

to sit in a district court can occupy a dual capacity, and exercise nisi prius and appellate powers at one and the same time."

■ This comment of the learned Senior District Judge evidently voiced the disapproval by himself and his colleagues of the public policy of Congress in expressly vesting power in a Circuit Judge to hold a district court and to "have all the powers, and rights, and perform all the duties, of a judge of the district." It may well be that the learned District Judges conceive that the judicial functions and duties of Circuit Judges should be confined to appellate powers; but nevertheless, they cannot directly or indirectly by rule or agreement among themselves nullify an act of Congress or disregard and overrule the unanimous opinion of the Supreme Court of the United States in Ex parte United States, 226 U. S. 420, 423, 33 S. Ct. 170, 172, 57 L. Ed. 281, to the following effect: "It is moreover, beyond question, that the statute, while contemplating as a general rule the holding of district courts by district judges, and as a general rule for holding circuit courts of appeal by circuit judges, nevertheless expressly directs when the occasion requires (§ 18 [28 USCA § 22]) the assignment by the senior judge, or the circuit justice, or the chief justice, of a circuit judge to hold a district court, and endows a judge so assigned with all the authority of a district judge (§ 19 [section 23]), giving power in case of such designation to hold separately at the same time a district court in such district, and to discharge all the judicial duties of the district judge therein. (§ 14 [section 18]). The statute therefore clearly gives to the circuit judges the rights and powers of judges of the new district courts, and calls such powers into play when assigned according to law."

■ District Judge Woolsey, however, did not declare in any direct way that I had not full statutory authority for assuming jurisdiction; but he held in effect, that, even if I had full jurisdiction and duty "to hold a District Court," nevertheless my jurisdiction had been effectively curtailed and limited by two recent rules which the District Judges had seen fit to adopt on June 30th, effective July 1st, under which I was precluded from exercising any jurisdiction whatever in the District Court unless expressly permitted to do so by the Senior District Judge, the first rule providing that "any judge designated to sit in the District Court for the Southern District of New York shall

do such work only as may be assigned to him by the senior district judge." This rule limiting my jurisdiction, in fact precluding any exercise whatever of jurisdiction except by leave of the Senior District Judge, was promulgated over the signature of the eight District Judges notwithstanding the unanimous opinion of the Supreme Court in the case of Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co., 263 U. S. 629, 635, 44 S. Ct. 220, 222, 68 L. Ed. 480: "But no rule of court can enlarge or restrict jurisdiction. Nor can a rule abrogate or modify the substantive law. This is true, whether the court to which the rules apply be one of law, of equity, or of admiralty. It is true of rules of practice prescribed by this court for inferior tribunals, as it is of those rules which lower courts make for their own guidance under authority conferred."

The history of the origin of the action of the learned District Judges, in pursuance of their determination to limit, if not exclude, the jurisdiction of the Senior Circuit Judge, will be enlightening and bear directly upon the unnecessary 'self exculpatory dictum above quoted to the effect that the present challenge of my jurisdiction "was not created or contributed to in any way" by any judge of the District Court.

In June, 1932, the attorneys for the plaintiff in a proposed application for an equity receivership in Chicago Title & Trust Company v. Fox Theatres Corporation applied to me for assistance to avoid the appointment of the Irving Trust Company as its receiver, giving as their reason therefor that the Irving Trust Company had already been appointed receiver for the Fox Metropolitan Playhouses against which company the Fox Theatres Company had a claim of a very substantial sum of money, $4,200,000, and counsel rightly opposed the same receiver to act for it, Fox Theatres Corporation as claimant, and the defendant Fox Metropolitan Playhouses. I interceded, sending for Judge Woolsey then presiding in the motion part of the District Court and urged him to appoint a receiver other than the Irving Trust Company in this instance. He stated he could see no objection to the same institution acting as receiver for both; indeed he suggested he would have a clerk of the Irving Trust Company make an investigation with a view of substituting bankruptcy proceedings instead of equity proceedings for conservation of the business and property of the Fox Theatres Company although its board of directors had determined upon an equity receivership as the best proceeding for conservation purposes. This became a clear case of public interest requiring action by the Senior Circuit Judge and I therefore appointed receivers, acting under a designation I made assigning myself generally to hold a district court in the Southern District of New York on March 20, 1930.

When on June 22d the Fox order was made appointing individual receivers, no question or challenge was or could be raised as to the regularity or legality of my action. The order appointing the receivers in this case was made under the same authority and duty conferred by the statute. What is there to distinguish the two orders, leaving the one legal and the other void? Merely that within seven days after the Fox order, to wit, June 29th, the District Judges amended their rules so as to deprive, if possible, the Senior Circuit Judge, duly designated, from all power to act except in such measure as the Senior District Judge might permit. It was these amendments which created the situation, without which there was no controversy whatever.

It appears from the records of the District Court that the Irving Trust Company has been appointed as receiver in more than 4,000 bankruptcy cases in this district and has also been appointed as a general rule in all equity cases. It is the exception where they are not appointed.

A few days after my appointment of receivers of the Fox Theatres Corporation, I noticed a publication in the New York Law Journal of July 6th of notice of the adoption of two rules which plainly were designed to curtail, limit, or exclude my jurisdiction in the District Court and to permit me as Senior Circuit Judge to "do such work only as may be assigned to him by the Senior District Judge." Thereafter and under date of July 7th I received a formal written notice from Senior District Judge Knox advising me "that the following additions have been made to the General Rules of this court, the same being effective as of July 1, 1932." I at once (July 8th) wrote the Senior District Judge pointing out my views at length, both as to the violation of the act of Congress in and by such general rules in so far as they would curtail or limit or abridge the statutory jurisdiction of the Senior Circuit Judge and my objections to the practice of appointing the Irving Trust Company as receiver in equity causes. Among other considerations, I urged the following:

"Furthermore, the appointment of the same trust company to all receiverships, equity as well as bankruptcy, involves inconsistent relations where the receiver of one corporation, for example, actually has a claim against itself as the receiver of another. There would appear to me to be an incongruity in placing the same individual or the same institution in a position which might require such individual or institution to demand of and even sue himself or itself for a debt asserted in one capacity, but denied in another. While this sometimes results unintentionally between trustees of interrelated trusts, the situation is embarrassing and should, preferably, be avoided.

"The fact 'is, precisely this situation recently arose in this district. A trust company already appointed equity receiver of a corporation, supposed to be largely indebted to another corporation, was about to be appointed receiver of the creditor corporation and would thus be placed in the position of asserting in one capacity a claim against itself, which it might be its duty to resist in the other capacity. Upon this showing I, as Senior Circuit Judge of this circuit, deemed it my duty to intervene, under my designation to act as District Judge, and to appoint equity receivers other than this trust company for the purpose of avoiding an apparent inconsistency of relations in receivership proceedings, the appearance of which I would consider detrimental to the administration of justice in this circuit. Before doing so, however, I took it up with the district judge then sitting where such applications are usually made, and failed to receive cooperation. In the case referred to, however, the appointment of members of the Bar was not involved. Specialized experience seemed requisite and my discretion was influenced by this consideration.

"I can understand, of course, that in certain bankruptcy receiverships where the problem is solely one of the collection of debts and the liquidation of assets, a well organized and efficient trust company of unquestionable financial stability could occasionally render more efficient service than some private individual or member of the bar lacking an office organization experienced in making sales and collecting moneys—many lawyers, however, are efficient and experienced liquidators. But in other cases, such as equity receiverships where it is desirable to preserve the assets and continue the business for the purpose of reorganization and rehabilitation, one or more individuals selected for their special qualifications for the particular undertaking in hand will, generally speaking, produce better results than a trust company. Not only specialized qualifications, but a livelier sense of personal responsibility is secured by the appointment of individuals.

"As the law forbids rules of the court to override Federal statutes, such as those referred to appear to do, I shall consider it my duty, whenever in my judgment the public interests require, to act under my designation as district judge and so acting, to discharge and perform such judicial functions as a district judge is authorized to perform. It will be recalled that my predecessors in office established this precedent some years ago, designating themselves to hold the district court in this circuit."

When on August 25th counsel, representing creditors of the Interborough Company, and the company called upon me and urged the approaching inevitable default on September 1st by the Interborough Company on its 7 per cent. gold notes then becoming due, of which $31,672,100 face value were outstanding in the hands of the public, and such counsel protested their grave apprehension that if they applied to the District Court the Irving Trust Company might be appointed receiver. They presented to me the affidavit of James L. Quackenbush, well known as the General Counsel of the Interborough System, sworn to August 25th, in which he stated as follows: "That on account of the complexity of the questions which will arise from time to time in the course of the administration of the foregoing cause, he believes and he is informed that the parties hereto believe that it is important and in the public interest that no receiver in the cause should be a trust company or any other corporation, but that the receiver or receivers should be an individual or individuals who could give constant and undivided attention to the matter; that the operation of the subways and elevated railroads could not be adequately managed by a trust company through its officers and employees; that while in bankruptcy the appointment of a trust company as receiver might be advisable such is not the case in respect to a railroad of the size, importance and character of the defendant with its complicated and involved daily operations, its enormous staff of operating officials and employees consisting of more than 18,000 individuals and its contracts and relations with the City of New York and the public using its facilities."

It therefore appeared to me, after considering the pleadings then before me, that this was essentially a case requiring, in the public interest as well as in the interest of the creditors, the appointment of individual receivers, the selection of which involved careful consideration by the court of their personal qualifications and ability to manage such a street railway system.

It needed no argument to convince me that such a large railroad system could not be administered as an insolvent mercantile business. The franchises must be protected and adequate public service must be assured and continued. I do not believe that the court can absolve itself of such a responsibility by permitting trust company executives to select their clerks or subordinates to run the receivership of their representatives; and it must be evident that the duties of the chief executives of a trust company or bank in their regular business are such as to preclude them from giving all of their time and attention to such a receivership, which they might do if they were personally appointed and able to devote all their time to the management and conservation of railway property. In other words, if there ever was a case calling in the public interest for the individual care and attention of competent personal receivers and the utmost constant care and supervision by the court in the selection of these individuals, the American Brake Shoe & Foundry Company's bill of complaint conclusively presented such a case.

From my experience at the time of the Fox Theatre Corporation application, it was quite apparent to me that the District Court might ignore Mr. Quackenbush's affidavit and the peculiar circumstances of this case and appoint a trust company receiver notwithstanding. I therefore felt that there was presented to me a situation in which clearly in the public interest I was required to act in accordance with what I deemed to be my duty in the premises, and accordingly appointed Messrs. Dowling and Murray receivers of the Interborough Company and Mr. Roberts a receiver of the Manhattan Company.

In my opinion the judicial power and duty vested by section 18 of the Judicial Code (28 USCA § 22) in the Senior Circuit Judge cannot be set aside by the district judges, and the district judges cannot extend and enlarge their powers so as to limit or exclude the statutory powers and duty of the Senior Circuit Judge. There has never been in the history of this circuit prior to the rules adopted by the district judges on June 30th, any attempt to interfere with the exercise of the powers and duty of the Senior Circuit Judge under section 18 of the Judicial Code.

Under the construction of this statute as given by Judge Woolsey, it must inevitably follow that even the Chief Justice or the Associate Justice of the United States Supreme Court who are empowered, under the same provisions under which I as Senior Circuit Judge have acted, to designate and appoint any Circuit Judge to sit in the Southern District of New York, would find that such designee and appointee would have no power to act other than what the Senior District Judge might choose to grant him, if any; and none at all, if the Senior District Judge so determined. Thus, if in a proper case the Chief Justice or Associate Justice of the United States Supreme Court considered it necessary to assign a Circuit Judge to act in the Southern District of New York, the District Judges here, upon the theory announced by Judge Woolsey, could effectually deprive such designee and appointee of all the judicial power granted to him by his designation and render such designation and appointment abortive.

As is well illustrated in this case, the public interest was clearly involved not only by reason of the vast property values and investments but 18,000 employees, millions of daily passengers, thousands of security holders, and the huge financial investment of the city of New York. This was the situation when reputable members of our bar came into my court and presented to me their dilemma, the vast property interest, the complexity of the management of such a railway system, their objections to a trust company receivership, and their apprehension that the district judges would appoint such a trust company. I was mindful of the general practice followed by all the district judges in insisting upon a trust company receivership. I was mindful of the judicial power intrusted to me and the judicial duty imposed upon me under section 18 of the Judicial Code to act when the public interest in my opinion required action. I profoundly believed that the public interest did then so require action, and I acted in accordance with my conception of my judicial duty in the premises.

Such is the history of the unfortunate and deplorable situation which has arisen. I have, however, personally endeavored to

avoid just such a controversy. I have repeatedly urged upon the district judges the necessity of their being free to appoint individual receivers of their own selection in a proper case where the parties to the action could present cogent reasons why a trust company should not be selected as an equity receiver. My correspondence on the subject with the Senior District Judge fully establishes this. I have no desire to impinge upon the authority of the district judges, and in my fourteen years upon the bench I have never been a party to any such interference. I cannot, however, acquiesce in the furtherance of the practice of a trust company receivership in important cases, regardless of the particular situations presented even to the point of nullifying and frustrating the power and duty imposed upon the Senior Circuit Judge of this circuit to discharge his responsibilities in a case where the public interest clearly requires him to act.

With the foregoing recital of the facts and the above presentation of the reasons necessary for the appointment of receivers, it is the duty of the receivers, and they are so directed, to safeguard and to protect the interests and properties intrusted to their care in accordance with the prior orders of this court, and I further direct them to take such steps toward the ultimate settlement of the legal questions as to the legality and regularity of the orders under which they are acting as their counsel may advise.