## AMERICAN BRAKE SHOE & FOUNDRY CO. v. INTERBOROUGH RAPID TRANSIT CO.

District Court, S. D. New York.
June 28, 1933.

Hornblower, Miller, Miller & Boston, of New York City, for Victor J. Dowling and T. E. Murray, Jr., receivers of Interborough Rapid Transit Co.

Breed, Abbott & Morgan, of New York City, for American Brake Shoe & Foundry Co.

James L. Quackenbush, of New York City, for Interborough Rapid Transit Co.

Charles Franklin, of New York City, for Manhattan Ry. Co.

Hughes, Schurman & Dwight, of New York City, for Wm. Roberts, as receiver of Manhattan Ry. Co.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, for J. P. Morgan and others, as Committee for ten-year Secured Convertible 7 per cent. Gold Notes of Interborough Rapid Transit Co. and as Committee for Interborough Rapid Transit Co. First and Refunding 5 per cent. Gold Bonds and Guaranty Transit Co. of N. Y., as trustee.

Root, Clark & Buckner, of New York City, for Louis J. Horowitz and others, as Committee for protection of holders of ten-year 5 per cent. Gold Notes of Interborough Rapid Transit Co.

Cotton, Franklin, Wright & Gordon, of New York City, for Van Santvoord, Merle-Smith, and others, as Protective Committee for Manhattan Ry. Co., Consolidated Mortgage Gold 4 per cent. Bonds.

Marshall & Wehle, of New York City, for Harold Palmer and others, as Committee for holders of 7 per cent. Guaranteed Stock of Manhattan Ry. Co.

Davies, Auerbach & Cornell, of New York City, for Central Hanover Bank & Trust Co., as trustee.

Milbank, Tweed, Hope & Webb, of New York City, for Chase Nat. Bank of City of New York, as trustee.

Sullivan & Cromwell, of New York City, for Committee for Interborough Rapid Transit Co., Capital Stock and Voting Trust Certificates for Capital Stock.

Dills-Muecke & Schelker, of New York City, for Manhattan Ry. Co.

Elon S. Hobbs, of New York City, in pro. per.

MANTON, Circuit Judge.

I have duly considered the opinion of the Supreme Court (53 S. Ct. 721, 729, 77 L. Ed. 1331) on the affirmance by it of the judgments of the Circuit Court of Appeals in the two suits in equity brought in the District Court for the Southern District of New York (1 F. Supp. 809) by Benjamin F. Johnson and Lillian Boehm, respectively, against the Manhattan Railway Company et al. [Johnson v. Manhattan Ry. Co. (C. C. A.) 61 F.(2d) 934, 937]. The opinion discusses the exercise of jurisdiction by me in the above-entitled suit of the American Brake Shoe & Foundry Company against the Interborough Rapid Transit Company in pursuance of the authority and judicial duty vested in me as Senior Circuit Judge in and by sections 22 and 23 of the U. S. Code, title 28 (28 USCA §§ 22, 23), which provide:

"§ 22. (Judicial Code, section 18, amended.) The Chief Justice of the United States, or the circuit justice of any judicial circuit, or the senior circuit judge thereof, may, if the public interest requires, designate and assign any circuit judge of a judicial circuit to hold a district court within such circuit. * * *

"During the period of service of any judge designated and assigned under this chapter, he shall have all the powers, and rights, and perform all the duties, of a judge of the district, or a justice of the court, to which he has been assigned (excepting the power of appointment to a statutory position or of permanent designation of newspaper or depository of funds). * * *

"§ 23. (Judicial Code, section 19 [amended].) It shall be the duty of the district or circuit judge who is designated and appointed under either of sections 17 to 22 of this title [U. S. C.], to discharge all the judicial duties for which he is so appointed, during the time for which he is so appointed; and all the acts and proceedings in the courts held by him, or by or before him, in pursuance of said provisions, shall have the same

effect and validity as if done by or before the district judge of the said district."

These sections are supplemented by section 213 of the U. S. Code, tit. 28 (Judicial Code § 118), 28 USCA § 213, which, after declaring it to be "the duty of each circuit judge in each circuit to sit as one of the judges of the circuit court of appeals in that circuit from time to time according to law," provides that "nothing in this section shall be construed to prevent any circuit judge holding district court or otherwise, as provided by other sections of the Judicial Code."

Mr. Justice Van Devanter declares in his opinion that the statute, section 22, "makes the public interest, as found by the assigning authority, the criterion," and then states as follows: "The District Judge did not rule on the part of the attack wherein it was contended that the assignment was invalid because there was no public interest requiring it; but the Circuit Court of Appeals rejected the contention on the ground that the recital or finding in the assignment that public interest required it is conclusive in this proceeding. Plainly the Circuit Court of Appeals was right. By section 22 the decision as to requiring public interest is left to the one having the power to assign. The duty and the responsibility are with him—as well when he is a Senior Circuit Judge as when he is the Chief Justice or a Circuit Justice. His decision that there is a requiring public interest is not open to a collateral attack such as is here presented. [Note No. 15 citing authorities.] And were it so open, no litigant could with any safety submit any matter to an assigned judge—a situation which would involve intolerable uncertainty and embarrassment to both public and private interests."

Yet, notwithstanding this explicit ruling that the Circuit Court of Appeals was plainly right because the statute "makes the public interest, as found by the assigning authority, the criterion" and "the recital or finding in the assignment that public interest required it is conclusive in this proceeding," from which it would ordinarily and logically follow that the Supreme Court was not called upon to pass upon the existence or nonexistence of a sufficient public interest, the opinion nevertheless proceeds to assume that the difference of opinion between the District Judge and myself as Senior Circuit Judge respecting the relative fitness of individuals and trust companies as equity receivers was the sole ground or consideration of public interest upon which I acted, and on that assumption expresses the view that in and of itself it "was not a proper ground."

As I am convinced that these assumptions were the result of a misapprehension, I deem it my duty to review as briefly as practicable the questions of jurisdiction and judicial duty presented to and passed upon by me as Senior Circuit Judge in August last when application was made to me in due form to exercise the judicial duty prescribed in the Act of Congress.

It should be noted at the outset that the Supreme Court concurs in my views as to the construction of section 22 authorizing "a special assignment such as is shown here," and as to my authority to designate and assign myself to hold a District Court, and it has likewise concurred in my views as to the invalidity of the so-called rules 1a and 11a adopted by the District Judges in June of last year in and by which they sought to nullify the Act of Congress by attempting to prevent any designated judge from performing judicial duties in the District Court except by the leave and at the discretion of the Senior District Judge, the language of rule 1a going so far as to provide that "any judge designated to sit in the District Court for the Southern District of New York, shall do such work only as may be assigned to him by the senior district judge." The Supreme Court has held that these so-called rules were in conflict with sections 22 and 23 of title 28 of the United States Code (28 USCA §§ 22, 23), and therefore invalid.

█ No Senior Circuit Judge could properly decline to consider an application presented to him in due form under the statute (28 U. S. C. § 22 [28 USCA § 22]), or could properly refuse to perform the judicial duty of determining whether or not in his judgment and discretion the public interest required that one of the Circuit Judges should be designated and appointed to hold a District Court. It is surely elementary and beyond question that when a statute provides that a judge "may, if the public interest requires," exercise jurisdiction, it is his duty to consider and determine whether or not the public interest so requires whenever an application is made to him in due form calling for the determination of that question. As Mr. Justice Van Devanter declared, speaking for the unanimous court, in Second Employers' Liability Cases, 223 U. S. 1, 58, 32 S. Ct. 169, 178, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44: "The existence of the jurisdiction creates an implication of duty to exercise it, and that its

exercise may be onerous does not militate against that implication." See, also, Ex parte American Steel Barrel Co., 230 U. S. 35, 45, 46, 33 S. Ct. 1007, 57 L. Ed. 1379.

In so advising the federal bench as to the proper rule of judicial duty, the Supreme Court undoubtedly had in mind and applied the principle of its famous decision in the leading case of Cohens v. Virginia, 6 Wheat. 264, 404, 5 L. Ed. 257, where Chief Justice Marshall impressively said: "It is most true, that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should. The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur, which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty."

The opinion of the Supreme Court declares that the suit brought by the American Brake Shoe & Foundry Company against the Interborough Rapid Transit Company "plainly was within the jurisdiction of the District Court as a federal court" and further that the Circuit Court of Appeals had accurately and concisely observed that: "The controversy does not touch the substantial relief asked by any of the parties; all acknowledge that the two railways are in such financial straits that a court of equity must take over their assets, to prevent their dismemberment by execution, attachment and the like. The plaintiffs, and those who have intervened [in the Johnson suit], ask for receivers, just as do the parties to the American Brake Shoe Company suit. The dispute touches merely who shall be the receivers, and who the judge to have charge of the receivership."

The imperative necessity and the judicial propriety of the immediate appointment of receivers were evident and indisputable on the face of the pleadings presented to me on August 25, 1932, in view of the default about to occur within a few days (on September 1st) upon $31,672,100 face value of obligations of the Interborough Company then falling due and a floating indebtedness of more than $2,500,000 including $1,340,000 of un-

paid taxes, then overdue, with no funds to pay the same.

When the bill of complaint and the accompanying affidavits were presented to me as Senior Circuit Judge, and application duly made to me that I should exercise the jurisdiction and perform the judicial duty expressly provided in section 22 of title 28 of the United States Code (28 USCA § 22), I was clearly called upon to determine whether the controversy and subject-matter set forth in the bill of complaint were of sufficient public importance to call for the designation in the public interest of a Circuit Judge of this circuit to hold a District Court, and, if I so concluded, then whether I should designate myself or one of the other Circuit Judges to discharge the exceptionally onerous labors and the exceptionally difficult judicial duties likely to be involved in such a suit.

■ I then entertained no doubt whatever, from long familiarity with the subject, and the Supreme Court concurs in this view, that it was the intention of Congress in and by the Act of March 3, 1911 (36 Stat. 1087), when the Circuit Courts were abolished and the Judicial Code was enacted, and again in and by the Act of September 14, 1922, when section 22 was recast and substantially re-enacted as part of title 28 of the United States Code, to impose upon the Senior Circuit Judge the judicial duty to designate and assign a Circuit Judge to hold a District Court whenever in his judgment any case of sufficient public importance and likely to present difficult and complicated questions of law and judicial administration was presented to him if in his judgment the public interests then so required. I was also of opinion that the statute clearly authorized a special designation for a special or single case. Such for twenty-one years had been, and it still is, the uniform construction of the statute and the uniform practice in every circuit. The opinion of the Supreme Court recognizes that when section 18 of the Judicial Code was enacted in 1911 and later recast in 1922 as section 22 of title 28 of the United States Code (28 USCA § 22), it was explained to the respective Houses of Congress that section 22 "was intended to establish a liberal and flexible plan under which Circuit Judges could sit in the District Courts; and that under it any Circuit Judge readily could be assigned to hold a District Court within his circuit whenever occasion therefor might arise, whether from a pressure of business in a District Court, from the presence therein of particular cases of special importance, from an

absence of business in the Circuit Court of Appeals, or from any other situation, if the Senior Circuit Judge, or the Circuit Justice, or the Chief Justice, deemed the assignment to be in the public interest." This quite conclusively appears from the debates published in the Congressional Record, as cited by Mr. Justice Van Devanter in a note to his opinion.

It had, moreover, been the well-known and uniform practice of all my predecessors in the Second Circuit to designate themselves to render additional and generally onerous judicial service in the District Court whenever they deemed this advisable in the public interest; namely, Senior Circuit Judges Lacombe, Ward, Rogers, and Hough, beginning in January, 1912, when Senior Circuit Judge Lacombe designated himself to hold a District Court and exercised jurisdiction over the receivership of the Metropolitan Street Railway System of the city of New York; and it had likewise been the general practice for many years in the other circuits, including cases of the insolvency of railroad or other public service corporations having property in two or more districts.

It was in the light of these precedents and of this uniform practice that I considered and determined that in view of the far-reaching public interests involved, the immense numbers of the public affected, the vast and unprecedented investment of the city of New York in the subway system leased to the Interborough Company, and the unprecedented and extraordinary importance and complexity of the issues involved and likely to be litigated, there was clearly presented to me a case which was essentially within the intent and purpose of Congress as evidenced by sections 22, 23, and 213, and that the public interest required the appointment of a Circuit Judge to hold the District Court in which the case should be heard and determined and the receivership administered.

I venture confidently to assert that in public interests affected and involved, values in controversy, numbers of creditors of all classes, capitalization, and outstanding securities, extent and value of lines operated in two districts, numbers of public affected, and investment and interests of the city of New York (over $309,000,000), no suit in equity has ever been brought in the Second Circuit which has equaled in public importance and public interest the case presented to me in August last by the bill of complaint in this suit, or which was more clearly within the

scope and purview of section 22 of title 28 of the United States Code (28 USCA § 22).

It is a misapprehension of my action and of my views to assume that the difference of opinion existing between the District Judges and myself as to the relative fitness of individuals and trust companies as equity receivers was the sole ground upon which I acted in determining the existence of adequate and sufficient public interest. The contrary is the fact, for the far-reaching and extensive public interests explained above and considerations of the public good were the principal and determining factors, although I did also consider the objections to the appointment of a trust company as receiver of such a railroad corporation.

In my opinion of October 18, 1932 ([D. C.] 1 F. Supp. 820), I did not state or intend to intimate that the question as to individuals or trust companies as receivers presented the only consideration of public interest which in my judgment required the appointment of a Circuit Judge to hold a District Court. I was therein answering and refuting the criticism of myself by District Judge Woolsey in his opinion in Johnson v. Manhattan Ry. Co., 1 F. Supp. 809. I did not consider or act upon the assumption that a mere difference of opinion as to the relative fitness of individuals and trust companies as receivers of corporations would constitute in and of itself a sufficient ground for exercising jurisdiction and a sufficient public interest within the intent and meaning of the Act of Congress (section 22), irrespective of the subject-matter of the controversy, although I was then and am still profoundly convinced that the public interest requires that a trust company should not be appointed receiver of such a railroad system or public service corporation as the Interborough Railroad Company, or of any other large corporate enterprise which has to be continued in operation, in order that its property may be conserved as a going concern and the performance of its services continued unbroken, for the due protection of the public interests and in furtherance of the public good.

I have examined the record and briefs and the report of the oral arguments in the Supreme Court, and I cannot find any basis in the record before the court for the assumption that my difference of opinion with the District Judges was the only ground upon which I exercised jurisdiction. I find the statements to this effect made by petitioners' counsel were unfounded and were duly challenged in the brief and argument on behalf

of the receivers. The only basis specified by petitioners' counsel for their contention upon this point was the affidavit of Mr. James L. Quackenbush, for many years the attorney and counsel for the defendant Interborough Company, and the opinion that I filed October 18th upon the petition of the receivers for instructions in view of District Judge Woolsey's decision criticizing my action and setting aside all the orders I had made as void and of no effect. (D. C.) 1 F. Supp. 820.

As to Mr. Quackenbush's affidavit, there is no suggestion therein that I should assume the exercise of jurisdiction or would be justified in so doing simply on the ground that individuals and not a trust company should be appointed as receivers of the Interborough Company. As disclosed on the face of this affidavit, he was urging that a trust company or any other corporation should not be appointed as receiver, and his statements would have been just as fitting and appropriate if they had been submitted to one of the appointed District Judges. It was a plea addressed to the court in favor of the appointment of individual receivers rather than a trust company "in respect to a railroad of the size, importance and character of the defendant, with its complicated and involved daily operations, its enormous staff of operating officials and employees consisting of more than 18,000 individuals and its contracts and relations with the City of New York and the public using its facilities." The affidavit undoubtedly was in support of the plea that in the public interest a trust company should not be appointed as receiver of such a corporation as the Interborough Company; but I certainly did not deem it then nor did any one then suggest it to be the sole ground calling upon me to exercise jurisdiction and determine in my judicial discretion as Senior Circuit Judge whether or not the public interest required that a Circuit Judge should be designated and assigned under section 22.

My opinion of October 18th (1 F. Supp. 820, 821) was misinterpreted by the petitioners' counsel on the argument in the Supreme Court as establishing that the only ground upon which I exercised jurisdiction was the difference between the District Judges and myself respecting the relative fitness of individuals and trust companies as equity receivers. This is an erroneous construction. I distinctly referred therein to the case involving "the due performance of their duties to the public in the care, management, and operation of the largest street railway system in this circuit, and which consisted of a railway system operated in both the Southern and Eastern Districts of New York, representing a capitalization and investment of over $300,000,000 with respect to the Interborough Company and the Manhattan Elevated Company, and a capitalization and investment of over $300,000,000 by the city of New York," and I further referred therein to the various outstanding issues of securities and emphasized the extent and far-reaching nature of the public interest and the huge financial investment of the city of New York, as follows (at page 827 of 1 F. Supp.): "As is well illustrated in this case, the public interest was clearly involved not only by reason of the vast property values and investments but 18,000 employees, millions of daily passengers, thousands of security holders, and the huge financial investment of the city of New York. * * * I was mindful of the judicial power intrusted to me and the judicial duty imposed upon me under section 18 of the Judicial Code [section 22, 28 U. S. C., 28 USCA § 22] to act when the public interest in my opinion required action. I profoundly believed that the public interest did then so require action, and I acted in accordance with my conception of my judicial duty in the premises."

The remaining point I desire to discuss is as to the propriety of designating myself to hold a District Court and take charge of this case, although the Supreme Court has fully recognized, as above shown, not only that I had ample legal authority to do so under the Act of Congress, section 22, but that my finding of the existence of the public interest was the criterion and conclusive, and that the duty and the responsibility were mine and not that of any other tribunal. I knew that it had been the uniform practice of my distinguished and revered predecessors in the office of Senior Circuit Judge in this circuit ever since the Act of Congress went into effect in 1912—to repeat, Senior Circuit Judges Lacombe, Ward, Rogers, and Hough —and I understood (subsequently confirmed by personal inquiry) that the practice had been general throughout all the other circuits. So far as I had ever heard or have yet heard, this uniform, well-known, and long-established practice of self-designation has never been criticized or challenged by the Chief Justice or justices of the Supreme Court, who would, of course, have acted to prevent its continuance if they had conceived that there was the slightest judicial irregularity or impropriety in the practice. Nor has the pro-

74

priety of this practice ever been questioned, so far as I know, at any of the annual conferences of Senior Circuit Judges under the presidency of the Chief Justice (28 U. S. Code, § 218 [28 USCA § 218]). It is true, as now publicly disclosed for the first time, so far as I am aware, in the opinion of Mr. Justice Van Devanter, that Senior Circuit Judge Sanborn in 1912 felt that such a self-assignment might have a personal side approaching impropriety, but this fact was not publicly disclosed; no suggestion or criticism on the subject, so far as I know, was ever made to the other Senior Circuit Judges; and Judge Sanborn's successor as Senior Circuit Judge accepted and conformed to the general practice of self-designation without, so far as I can ascertain, any intimation or disapproval by any one. When Judge Woods became Senior Circuit Judge of the Fourth Circuit, I am informed that he wrote to Chief Justice Taft inquiring whether or not he could with propriety designate himself, and that he was advised by the Chief Justice "that there was no necessity for bothering the Chief Justice with requests to designate him [Judge Woods] to sit in the District Court, but that he should proceed to designate himself whenever in his opinion such designation was proper."

After the most anxious and self-critical consideration, I am convinced that I was fully justified in following a practice and course of action which had been uniformly followed by all my predecessors in the Second Circuit and by the Senior Circuit Judges of all the other circuits, most of them judges of the highest national distinction and repute. This view is fully confirmed by the following quotation from the opinion of Mr. Justice Van Devanter: "The practice of the Senior Circuit Judges here described [i. e., of self-designation] and the decision just mentioned amounted to a practical construction of the provision in question in keeping with its literal meaning. In 1922, after that construction had prevailed and been acted on for several years, the provision was re-enacted by the Congress as part of an act dealing with other assignments of judges to the District Courts. [Note No. 13.] The re-enactment was without any change indicative of a disapproval of the prior construction by the Senior Circuit Judges. In such circumstances, as this court often has pointed out, re-enactment operates as an implied legislative approval of the prior construction—in other words, as a re-enactment of the statute as before construed. [Note No. 14.]"

Every judge worthy of judicial office ought to be keenly sensitive to and deeply concerned at any intimation of any action on his part approaching impropriety in the discharge of what always ought to be regarded as a sacred duty. In the present case, I was acting in the performance of my judicial duty according to my conscience and in the belief which I still entertain that I was authorized and called upon by the Act of Congress to do exactly what I did if in my judgment the public interest so required.

In the light of these profound convictions and with great respect, I cannot for the present bring myself voluntarily to withdraw from this case, whatever may be my ultimate decision. Applications involving vital property rights and interests have been partially argued and are to be further argued which require my study and decision. Counsel who have appeared representing the various parties in these proceedings, except Mr. Hughes (who preferred not to express an opinion) and Mr. Franklin, have assured me that there has been no embarrassment and will be none in the receivership proceedings by reason of my self-designation. I am confident that if and when the Supreme Court's attention is called to this statement of public interest, it will agree that within the admonition of Cohens v. Virginia, supra, I must continue the performance of my duties to judicially supervise these receivership proceedings.